

# In the
# Missouri Court of Appeals
## Western District

RANDEL MCDONALD, ET AL.,

        **Appellants,**

v.

**INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, ET AL.,**

        **Respondents.**

**WD77854**

**OPINION FILED:**

**March 31, 2015**

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Bryan Round, Judge**

**Before Division Three:
Victor C. Howard, P.J., James Edward Welsh, and Gary D. Witt, JJ.**

Randel and Kathryn McDonald, doing business as McDonald Marketing Services, appeal the circuit court's judgment in an equitable garnishment action finding that Insurance Company of the State of Pennsylvania (ICSOP) is entitled to a credit in the amount of $62,500 for amounts paid to the McDonalds by two different insurance carriers in an underlying lawsuit. The McDonalds assert six points on appeal. The McDonalds contend that the circuit court erred: (1) by admitting evidence of payments by their insurance carrier, Charter Oak Fire Insurance Company, because evidence of payments from a collateral source is inadmissible and prejudicial; (2) by admitting evidence of their settlement with Charter Oak because the settlement was

irrelevant, immaterial, and prejudicial and may not be used to mitigate the damages owed by ICSOP, (3) by finding that ICSOP is entitled to a credit for their settlement of claims against Charter Oak and Certain Underwriters at Lloyd's of London because ICSOP cannot re-litigate the liability of its insured in the underlying lawsuit and is bound by the judgment entered in the underlying lawsuit, (4) by failing to enter judgment in their favor and against ICSOP for the entirety of the judgment entered by the court in the underlying lawsuit because the judgment is binding on ICSOP in an equitable garnishment action, (5) by failing to award them prejudgment interest because they are entitled to prejudgment interest pursuant to section 408.020, RSMo 2000, and (6) by failing to assess court costs against ICSOP because they are entitled to costs pursuant to section 514.060, RSMo 2000, and Rule 77.01.  We reverse the circuit court's judgment and remand for the circuit court to determine whether it wants to exercise its discretion to award prejudgment interest and costs in this case in light of our reversal.

On December 3, 2012, the McDonalds filed suit in the District Court of Wyandotte County, Kansas, against Bam, Inc. (Bam); Certain Underwriters at Lloyd's of London (Lloyd's), and Charter Oak Fire Insurance Company (Charter Oak).  Through the petition, the McDonalds alleged that they contracted with Bam to transport frozen food from a warehouse in Independence, Missouri, to a warehouse in Wyandotte County, Kansas.  According to the petition, the goods were frozen when placed onto Bam's trailer and had to remain frozen to be edible and useable food products.  The petition further alleged that Bam delayed the transportation of the products and that when the products arrived in Kansas City, Kansas, the products were no longer frozen.  The McDonalds claimed that Bam was insured under a policy of insurance issued by Lloyd's and that they were entitled to pursue a direct case of action against Lloyd's.  They also asserted that they were insured under a policy of property insurance issued by

2

Charter Oak. The McDonalds stated that claims had been made on both insurance companies for the loss, but neither insurance company had agreed to pay. The McDonalds prayed for damages in the amount of $75,000 against Bam, Lloyd's, and Charter Oak and requested costs and attorney's fees.

After filing the petition, the McDonalds settled with Lloyd's in the amount of $25,000 in exchange for the McDonalds' dismissing Lloyd's from the underlying lawsuit with prejudice. The McDonalds also settled with Charter Oak in the amount of $37,250 in exchange for the McDonalds' dismissing Charter Oak from the underlying lawsuit with prejudice.

Service in the underlying lawsuit was effectuated on Bam by serving the Missouri Secretary of State. Bam did not answer or otherwise respond to the McDonalds' petition in the underlying lawsuit and did not file any pleading in the matter.

In the meantime, Bam's insurer, ICOSP, was notified of the McDonalds' suit in the District Court of Wyandotte County, Kansas. On April 29, 2013, ICOSP notified Bam that "there was no coverage" under its policy for the claims filed by the McDonalds, and ICSOP refused to defend Bam in the underlying lawsuit.

On July 23, 2013, the District Court of Wyandotte County, Kansas held a default hearing in the underlying lawsuit. Kathryn McDonald offered testimony regarding the claim for damages. The evidence established that Bam delivered a trailer to a warehouse in Independence, Missouri. Bam's driver opened the doors to the trailer and backed the trailer into the loading dock in such a manner that prevented the doors on the trailer from closing. The driver then disconnected the trailer from the truck and left the warehouse. The McDonalds' employees then loaded the frozen food into the trailer. Bam's driver did not return, even though numerous telephone calls were made to Bam. During that time, the frozen food products were sitting in the

3

trailer with the doors open and no way to refrigerate them. After several hours, a different driver for Bam arrived at the Independence warehouse to transport the food to the Wyandotte County, Kansas, warehouse. It was at this time that the doors to the trailer could be closed and that the refrigeration on the trailer activated. As a result of the delay caused by Bam, the formerly frozen food products thawed to the point that they could not be sold as edible food product and had to be destroyed.

Kathryn McDonald claimed that they lost frozen food valued at $70,472.75; incurred additional labor costs as the result of the unreasonable delay in the amount of $693.75, lost profit from the inability to sell the inventory in the amount of $27,085.73, and lost business as a result of customers having to find other frozen food products in the amount of $18,412.43. The District Court of Wyandotte County, Kansas, entered a default judgment against Bam for the above noted amounts, for a total judgment of $116,664.66.

On August 28, 2013, the McDonalds filed their petition for equitable garnishment against ICSOP and Bam, seeking to satisfy the default judgment entered against Bam by garnishing the policy of insurance issued by ICSOP. The McDonalds claimed that they were entitled to judgment against ICSOP in the amount of $116.664.66 and entitled to costs, attorney's fees, and prejudgment interest on the liquidated sum. ICSOP filed its answer denying that the ICSOP policy could be garnished and asserted an affirmative defense stating:

> To the extent [the McDonalds] have received full or partial payment for the damages claimed in the Petition from any party or nonparty, including, but not limited to Charter Oak Fire Insurance Company and/or Certain Underwriters at Lloyd's London, by way of assistance, payment settlement, judgment, or otherwise, ICSOP is entitled to a setoff in the amount of such payment(s).

The McDonalds filed a motion for summary judgment seeking the circuit court's determination that the damages awarded to them by the District Court of Wyandotte County,

Kansas, were covered under ICSOP's policy of insurance. The circuit court granted the McDonalds' motion for summary judgment finding that the policy of insurance issued by ICSOP provided coverage to Bam. Specifically, the circuit court found that, "since the frozen goods were not in the care, custody and control of Bam at the time the frozen goods were damaged, the 'care, custody and control' exclusion in the policy of insurance did not apply and the injury was covered by the policy of insurance issued by [ICSOP]." The circuit court, however, denied the McDonalds' motion for partial summary judgment on ICSOP's claim for a credit or set-off and set the matter for trial.

During trial, the circuit court granted ICSOP's motion to amend its affirmative defense by interlineation to read:

> To the extent plaintiffs have received full or partial payment for the damages claimed in the Petition from any party or nonparty, including, but not limited to Charter Oak Fire Insurance Company and/or Certain Underwriters at Lloyd's London, by way of assistance, payment settlement, judgment, or otherwise, ICSOP is entitled to a setoff in the amount of $37,250 and/or $25,000 paid, respectively, by Charter Oak Fire Insurance and Certain Underwriters at Lloyd's London.

When ICSOP sought to introduce into evidence the McDonalds' settlement agreement with Charter Oak and settlement agreement with Lloyd's, the McDonalds objected. With regard to their settlement with Lloyd's, the McDonalds argued that any claim that Bam was entitled to a credit had to be raised in the District Court of Wyandotte County, Kansas. As to the settlement with Charter Oak, the McDonalds argued that (1) any claim that Bam was entitled to a credit had to be raised in the District Court of Wyandotte County, Kansas, and (2) that any insurance coverage obtained by the McDonalds was a collateral source. The circuit court overruled those objections.

5

At the end of trial, the circuit court announced from the bench that ICSOP was "entitled to credit of $37,250 and $25,000 for the recovery made previously, and that is based on the notion that generally that I don't think that the plaintiff is entitled to a windfall and to recover more than they lost." On August 12, 2014, the circuit court entered its judgment consistent with its ruling from the bench, finding in favor of the McDonalds in the amount of $116,664.66 but finding that ICSOP was entitled to a credit in the amount of $62,500. Thus, the circuit court entered judgment against ICSOP in the amount of $54,164.66 and ordered each side to bear its own costs. The McDonalds appeal from the circuit court's judgment.

Review of this court-tried equitable garnishment action is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 705 (Mo. banc 2011). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

In their first two points on appeal, the McDonalds assert that the circuit court erred in admitting evidence of the payment/settlement made by the McDonald's insurance carrier, Charter Oak. First, the McDonalds contend that evidence of payment from a collateral source is inadmissible and prejudicial pursuant to the collateral source rule. Second, they contend that evidence of their settlement with Charter Oak was irrelevant, immaterial, and prejudicial and may not be used to mitigate the damages owed by ICSOP, the insurer of the wrongdoer. We agree.

"The collateral source rule is an exception to the general rule that damages in tort are compensatory only." *Smith v. Shaw*, 159 S.W.3d 830, 832 (Mo. banc 2005). The collateral source rule prevents a wrongdoer from reducing his liability for damages to an injured person by

6

proving that "'plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent'" of the wrongdoer. *Collier v. Roth*, 434 S.W.2d 502, 507 (Mo. 1968) (citation omitted). "'[S]tated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged.'" *Id*. (citation omitted). "The application of the collateral source rule prevents an alleged tortfeasor from attempting to introduce evidence at trial that the plaintiff's damages will be covered, in whole or in part, by the plaintiff's insurance." *Smith*, 159 S.W.3d at 832. "The rule expresses the policy that a 'wrongdoer should not benefit from the expenditures made by the injured party in procuring the insurance coverage.'" *Id*. (citation omitted). "The rationale for such application of the collateral source rule is that 'plaintiffs who contract for insurance or other benefits with funds they could have used for other purposes are entitled to the benefit of their bargain.'" *Porter v. Toys 'R' Us-Delaware, Inc.*, 152 S.W.3d 310, 320 (Mo. App. 2004) (citation omitted). Application of the collateral source rule, therefore, depends on proof that the McDonalds contributed to the funds they claim as a collateral source. *Moore v. Auto. Group, Inc. v. Lewis*, 362 S.W.3d 462, 470 (Mo. App. 2012) (citing *Tatum v. Van Liner Ins. Co.*, 104 F.3d 223, 225 (8th Cir. 1997)).

No dispute exists in this case that the McDonalds paid Charter Oak for first party insurance coverage for any damage to their property. The McDonalds, therefore, contracted for insurance through Charter Oak with funds that they could have used for other purposes. As such, they are entitled to the benefit of their bargain. Pursuant to the collateral source rule, Bam, as the wrong doer, and its insurer should not benefit from the expenditures made by the McDonalds in procuring insurance coverage from Charter Oak.

ICSOP argues that evidence of Charter Oak's payment to the McDonalds was necessary and relevant to establish its right to set-off and that, without the evidence of Charter Oak's

7

payment, the McDonalds would be impermissibly allowed to recover twice for the same injury.[1]

ICSOP fails to understand, however, that "[t]e collateral source rule is an exception to the general rule that damages in tort are compensatory only." *Smith*, 159 S.W.3d at 832. Under the collateral source rule, ICSOP cannot obtain a credit for a payment made by the McDonalds' collateral source and cannot introduce evidence on such as an affirmative defense. The circuit court, therefore, erred in admitting evidence of the payment/settlement made by Charter Oak and erred in ordering that ICSOP was entitled to a credit for the Charter Oak settlement.[2]

In their third point on appeal, the McDonalds assert that the circuit court erred in finding that ICSOP was entitled to a credit for their settlement of claims against Charter Oak and Lloyd's. The McDonalds argue that ICSOP is not entitled to a credit because it cannot re-litigate the liability and damages of its insured in the underlying lawsuit and is bound by the judgment entered by the District Court of Wyandotte County, Kansas, in the underlying lawsuit. As we have already determined that ICSOP was not entitled to a credit for the McDonalds' settlement of their claim with Charter Oak, we address only whether ICSOP was entitled to a credit for the McDonalds' settlement of their claim with another of Bam's insurers, Lloyd's.

---

[1]To the extent that ICSOP is concerned about the McDonalds' receiving a double recovery for their property damage, we note that such a concern lies with the McDonalds' insurer and not with ICSOP. When an insurer pays an insured for a claim that the insured has against a tortfeasor, although the insured retains legal title to the claim, the insurer has a right to subrogation. *Knob Noster R-VIII School Dist. v. Dankenbring*, 220 S.W.3d 809, 816 (Mo. App. 2007). In a subrogation action, "[t]he exclusive right to pursue the tortfeasor remains with the insured, and the insured holds the proceeds for the insurer." *Id.* Even if an insurer foregoes its right of subrogation as part of its settlement with its insured, the principle is the same as it is just a factor in the determination of the consideration exchange.

[2]We acknowledge that generally the erroneous admission of evidence in a court tried case is rarely a cause for reversal because we are to presume that the circuit court considered only properly admitted evidence and ignored inadmissible evidence. *Mullenix-St. Charles Props., L.P. v. City of St. Charles*, 983 S.W.2d 550, 557 (Mo. App. 1998). However, where, as in this case, it is obvious that the circuit court relied on improperly admitted evidence, the presumption is rebutted. *Id.*

In the underlying lawsuit, Bam did not raise the issue that it was entitled to a credit for the settlement by Lloyd's. Generally speaking, "'[w]hen a plaintiff receives a pretrial settlement that partially compensates his claim, the trial court will take any prior payments into consideration and will credit them on the damages assessed . . . as required by law.'" *Moore*, 362 S.W.3d at 468 (citation omitted). "Accordingly, if a plaintiff stands to recover duplicative damages for the same wrong, a defendant may plead an affirmative defense seeking to offset any judgment against it by any amounts already received by the plaintiff as compensation for that wrong." *Id*. "To prove a double recovery, a defendant must demonstrate an overlap between: (1) the injuries or damages for which a plaintiff has received compensation; and (2) the injuries or damages that are the subject of a plaintiff's claim against the defendant." *Id*. "Where . . . a defendant claims an offset based on a settlement payment received by the plaintiff, how the settling parties intended the settlement to be allocated is a question of fact." *Id*. Bam did not plead any affirmative defense seeking to offset any judgment against it by any amounts received by the McDonalds from Lloyd's as compensation for that wrong.

As Bam's insurer, ICSOP had the opportunity to control and manage the litigation in the underlying lawsuit, but ICSOP determined that "there was no coverage" under it policy for the claims filed by the McDonalds and chose not to defend Bam in the underlying lawsuit. ICSOP is essentially taking the position that, although its policy of insurance covered Bam and although it wrongfully denied coverage and wrongfully refused to defend Bam in the underlying lawsuit, it is entitled to a credit for the Lloyd's settlement even though Bam itself could not benefit from it, given that Bam failed to raise it as an affirmative defense in the underlying lawsuit. "Where one is bound to protect another from liability, he is bound *by the result of the litigation* to which such other is a party, provided he had opportunity to control and manage it." *Schmitz*, 337 S.W.3d at

9

709 (citations and internal quotation marks omitted and emphasis in the original). "The standard is whether the insurer had the opportunity to control and manage the litigation, not whether the insurer had the duty to control and manage the litigation." *Id*. at 709-10 (emphasis omitted). ICSOP cannot deny coverage and refuse to defend an insured and then try to re-litigate the damages owed by its insured in an equitable garnishment action. As the Missouri Supreme Court has stated, "The insurer that wrongly refuses to defend is liable for the underlying judgment as damages flowing from its breach of its duty to defend." *Columbia Cas. Co. v. HIAR Holding, LLC*, 411 S.W.3d 258, 265 (Mo. banc 2013).

Further, even had Bam raised the issue of a credit/set-off of the Lloyd's settlement as an affirmative defense, "how the settling parties intended the settlement to be allocated" was a question a fact for the District Court of Wyandotte County, Kansas. *Moore*, 362 S.W.3d at 468. *Id*. The settlement agreement entered into by Lloyd's stated that Lloyd's denied that its cargo policy provided coverage for the claim against Bam and denied that the McDonalds had any direct cause of action against Lloyd's. Further, it stated that Lloyd's desired to avoid the expense of defending themselves and the expense of a defense, under reservation of rights, of Bam. Thus, Lloyd's settled with the McDonalds in the amount of $25,000 in exchange for the McDonalds' dismissing Lloyd's from the underlying lawsuit with prejudice. To establish that the McDonalds were receiving a double recovery for its property damage, Bam would have had the burden to prove that there was an overlap between the injuries or damages for which the McDonalds received compensation from Lloyd's and the injuries or damages that were the subject of the McDonalds' claim against Bam in the underlying lawsuit. No such evidence was presented in the underlying default judgment lawsuit.

10

All of these issues could have and should have been resolved in the underlying lawsuit in the District Court of Wyandotte County, Kansas. Given that ICSOP had the opportunity to control and manage the underlying lawsuit but failed to seize the opportunity, ICSOP is not entitled to a credit for the McDonalds' settlement of their claim against Lloyd's.

In their fourth point on appeal, the McDonalds assert that the circuit court erred by failing to enter judgment in their favor and against ICSOP for the entirety of the judgment entered by District Court of Wyandotte County, Kansas, in the underlying lawsuit because the judgment is binding on ICSOP in an equitable garnishment action. We agree.

"An equitable garnishment action is a legal proceeding, authorized by section 379.200, RSMo [2000], to reach insurance money in satisfaction of a judgment." *Smith v. Progressive Cas. Ins. Co.*, 61 S.W.3d 280, 283 (Mo. App. 2001). "To establish an equitable garnishment claim, the plaintiff must prove that he obtained a judgment in his favor against the insurance company's insured, the policy was in effect when the incident occurred and that the injury is covered by the insurance policy." *Kotini v. Century Sur. Co.*, 411 S.W.3d 374, 377 (Mo. App. 2013). "The underlying judgment is binding on the insurer by way of the doctrine of collateral estoppel." *Id*. at 378.

In this case, the McDonalds established that they obtained a judgment in their favor against Bam in the District Court of Wyandotte County, Kansas, that ICSOP's insurance policy was in effect when the damage to the McDonalds' property occurred, and that the damage to the property was covered by the insurance policy. Thus, the underlying judgment entered by the District Court of Wyandotte County, Kansas, is binding on ICSOP through collateral estoppel. Therefore, because we have held that ICSOP was not entitled to any credits for the settlement payments by Charter Oak or Lloyd's, the circuit court erred in failing to enter judgment against

11

ICSOP for the entirety of the judgment entered by District Court of Wyandotte County, Kansas, in the underlying lawsuit.

In their last two points on appeal, the McDonalds contend that the circuit court erred by failing to award them statutorily mandated prejudgment interest and by failing to assess court costs against ICSOP. The McDonalds assert that they are entitled to prejudgment interest pursuant to section 408.020, RSMo 2000, and entitled to have costs assessed against ICSOP pursuant to section 514.060, RSMo 2000.

An equitable garnishment action is "a suit in equity against the insurance company to seek satisfaction of one's judgment under an insurance policy." *Little v. Am. States Ins. Co.*, 179 S.W.3d 433, 434 n.2 (Mo. App. 2005). "'In equitable actions, the determination of whether to award prejudgment interest is left to the discretion of the trial court.'" *Springfield Land & Dev. Co. v. Bass*, 48 S.W.3d 620, 634 (Mo. App. 2001) (quoting *21 West, Inc., v. Meadowgreen Trails, Inc.*, 913 S.W.2d 858, 872 (Mo. App. 1995)). The same is true in regard to an award of costs. "In equity cases, the trial court has an inherent, discretionary power to award costs to either party or to award them proportionately among the parties." *Bd. of Managers of a part of Peppertree Square, Section No. 1 v. Ricketts*, 701 S.W.2d 767, 769-70 (Mo. App. 1985); *Sadowski v. Brewer*, 693 S.W.2d 891, 893 (Mo. App. 1985). "The award of costs is a matter within the circuit court's sound discretion[.]" *Sasnett v. Jons*, 400 S.W.3d 429, 441 (Mo. App. 2013); *Peet v. Randolph*, 157 S.W.3d 360, 366 (Mo. App. 2005).

Because we are reversing the circuit court's judgment to the extent that it found that ICSOP was entitled to a credit in the amount of $62,500 for amounts paid to the McDonalds by their settlement of claims with Charter Oak and Lloyd's, we feel compelled to remand this case

12

to the circuit court for it to determine whether it wants to exercise its discretionary power to award prejudgment interest and costs in this case.

## Conclusion

We, therefore, reverse the circuit court's judgment finding that ICSOP is entitled to a credit in the amount of $62,500 for amounts paid to the McDonalds by their settlement of claims with Charter Oak and Lloyd's. We remand for the circuit court to determine whether it wants to exercise its discretion to award prejudgment interest and costs in this case.

 /s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.