

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| KRETSINGER REAL ESTATE COMPANY and AMERICAN CENTRAL TRANSPORT, INC., | ) ) ) ) | |
| Appellants, | ) ) | WD78791 |
| v. | ) ) ) | OPINION FILED: June 21, 2016 |
| AMERISURE INSURANCE COMPANY, | ) ) ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Janet Sutton, Judge**

**Before Division IV:** Alok Ahuja, Chief Judge, Presiding,
Mark D. Pfeiffer, Judge, and J. Dale Youngs, Special Judge

Kretsinger Real Estate Company ("Kretsinger") and American Central Transport, Inc.

("ACT") (collectively, "Judgment Creditors") appeal from the Judgment of the Circuit Court of

Clay County, Missouri ("trial court"), after a bench trial, in favor of Amerisure Insurance

Company ("Amerisure") on the Judgment Creditors' equitable garnishment claim. We affirm.

**Facts and Procedural History**[1]

ACT desired to erect a parking lot in Clay County, Missouri, on land that it leased from Kretsinger. The parking lot was to abut ACT's truck maintenance center. The City of Kansas City approved the ACT terminal development plan, which included a pavement plan with pavement specifications. Kretsinger and ACT hired Triad Construction, Inc. ("Triad") to construct the parking lot in accordance with the pavement plan. Triad subcontracted with City Cement Construction Company to supply labor and materials. City Cement purchased the concrete used to construct the parking lot from Fordyce Concrete.

City Cement completed construction of the parking lot in February 2007. Kretsinger and ACT commenced using the parking lot for tractors and trailers in March 2007. In May 2008, Kretsinger and ACT became aware that the parking lot was beginning to crumble, crack, and deteriorate.

Kretsinger and ACT filed suit against Triad and City Cement,[2] asserting claims for negligence in design of the parking lot, negligent misrepresentation, breach of professional contract, negligent supervision, and breach of contract ("Underlying Lawsuit"). A bench trial was conducted on December 30, 2013. The court entered judgment in favor of Kretsinger and ACT and against Triad on the negligent supervision and breach of contract counts and in favor of Triad and against Kretsinger and ACT on the negligence in design, negligent misrepresentation, and breach of professional contract counts. The court concluded that Triad breached its contract with Kretsinger and ACT to furnish all required labor, material, and equipment necessary to provide a parking lot in accordance with the ACT terminal final development plan and pavement bid.

---

[1] This court views the evidence in the light most favorable to the trial court's judgment. *Vill. at Deer Creek Homeowners Ass'n v. Mid-Continent Cas. Co.*, 432 S.W.3d 231, 234 n.1 (Mo. App. W.D. 2014).
[2] Kretsinger and ACT later dismissed all claims against City Cement.

In accordance with the opinion of Kretsinger and ACT's expert, Dr. Avi Mor, the court found:

- the concrete that City Cement purchased from Fordyce Concrete was defective *at the time it was purchased and installed* because it had air entrainment that was excessive and inconsistent, it had reinforcement fiber that was not sufficiently mixed, it consistently failed to attain the PSI and flexural strength required by the pavement plan, and it failed to achieve a strength adequate for the load after curing at least 28 days;

- the deterioration of the concrete was not repairable, and the only viable option for correction was removal and replacement of the concrete.

The court found that City Cement did not construct the parking lot in accordance with the pavement plan in that it used defective concrete and that Triad was responsible for the actions of its subcontractor City Cement. The court further found that as a direct and proximate result of the use of the defective concrete in the construction of the parking lot, the parking lot failed. The court found that the parking lot was irreparable and will continue to fail and deteriorate, with the only viable option for correction of the defective concrete being removal and replacement.

The court awarded Kretsinger and ACT a total of $3,374,870.80 in damages as a result of City Cement's use of defective concrete. The court found that the damages were liquidated and awarded Kretsinger and ACT prejudgment interest at the rate of 9% per annum from March 1, 2007, *the date City Cement finished installing the defective concrete*, until the date of judgment, December 30, 2013, for a total of $2,077,071.30 in prejudgment interest ("Underlying Judgment").

Thereafter, on February 8, 2014, Judgment Creditors filed a petition for equitable garnishment pursuant to section 379.200, RSMo 2000, against Triad and its commercial general

3

liability ("CGL") insurer, Amerisure Insurance Company ("Amerisure"). Judgment Creditors sought satisfaction of the Underlying Judgment from primary and umbrella insurance policies issued by Amerisure to Triad.

A bench trial was conducted. Judgment Creditors' evidence consisted of certified copies of the primary and umbrella insurance policies issued by Amerisure to Triad, with effective dates from August 1, 2007, through August 1, 2011; certified copies of the certificates of good standing for Kretsinger and ACT; certified copies of the petition in the Underlying Lawsuit, the answers of Triad and City Cement, and the Underlying Judgment.

Amerisure's evidence included a certified copy of the transcript of the Underlying Lawsuit and the transcript of the deposition of a representative of Cincinnati Insurance Company and accompanying exhibits, which included the primary and umbrella insurance policies Cincinnati issued to Triad for the policy period from August 2005 through August 1, 2007, and evidence of Cincinnati's settlement of the property damage claim against Triad. Testifying for Amerisure was Randall Bernhardt, a licensed engineer certified for testing concrete and asphalt for pavement. Based upon his review of Dr. Mor's affidavit and the business records of Alpha Omega Geotech, which had tested the concrete, Mr. Bernhardt agreed with Dr. Mor's opinions that the concrete did not meet the specifications, was deficient, and should have been rejected. He testified that the only remedy for out-of-specification concrete is removal and replacement with up-to-specification concrete.

The trial court entered its judgment on June 3, 2015, in favor of Amerisure and against Judgment Creditors. The trial court found that Amerisure issued a CGL policy to Triad with policy limits of $1 million per occurrence and an umbrella policy with policy limits of $10 million per occurrence for the periods, with three annual renewals, of August 1, 2007, through

August 1, 2011. The trial court concluded that Judgment Creditors did not meet their burden of establishing coverage under Amerisure's policies, and alternatively, Amerisure had met its burden to establish that the "your product" exclusion in the policies applied to defeat coverage. Specifically, the trial court concluded:

(1) Judgment Creditors failed to offer substantial evidence of "property damage" within any Amerisure policy period; coverage under CGL insurance policies is triggered when the "injury-in-fact" occurs, and Judgment Creditors' damages were fixed as of March 1, 2007, when the parking lot was put to its intended use and immediately began to deteriorate because the only remedy for that damage was complete removal and repair of the parking lot;

(2) Judgment Creditors failed to offer substantial evidence that the damages awarded in the Underlying Judgment constituted an "occurrence" covered by the Amerisure policies; damages flowing from a breach of contract due to failure to perform to designated specifications does not trigger coverage under an indemnity policy; and

(3) Judgment Creditors' claims are barred by the "your product" policy exclusion.

Judgment Creditors timely appealed.

**Standard of Review**

The interpretation of Amerisure's policies to determine whether they cover the damages awarded Judgment Creditors in the Underlying Judgment is a question of law we review *de novo*. *Vill. at Deer Creek Homeowners Ass'n v. Mid-Continent Cas. Co.*, 432 S.W.3d 231, 239 (Mo. App. W.D. 2014). "However, in reviewing any factual determinations made by the trial court as a precursor to its determination of coverage, we apply the standard established by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Id.* (internal quotation omitted). Under this

standard, we will affirm the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law. *Id.* "In applying this standard, we must view the evidence in [the] light most favorable to the judgment and disregard all contrary evidence and permissible inferences." *Id.* (internal quotation omitted).

**Equitable Garnishment**

This appeal arises from the judgment in an equitable action brought pursuant to section 379.200. Although sometimes called an "equitable garnishment," this direct cause of action against an insurance company "is no garnishment at all." *Zink v. Emp'rs Mut. Liab. Ins. Co. of Wis.*, 724 S.W.2d 561, 564 (Mo. App. W.D. 1986), *overruled on other grounds by Johnston v. Sweany*, 68 S.W.3d 398, 403 (Mo. banc 2002). "An equitable garnishment action is a legal proceeding, authorized by section 379.200, RSMo [2000], to reach insurance money in satisfaction of a judgment." *McDonald v. Ins. Co. of State of Pa.*, 460 S.W.3d 58, 67 (Mo. App. W.D. 2015) (internal quotation omitted). "The underlying judgment is binding on the insurer by way of the doctrine of collateral estoppel." *Id.* (internal quotation omitted).

To establish an equitable garnishment claim, Judgment Creditors have the burden of proving three elements:

- First, that they obtained a judgment in their favor against Amerisure's insured (Triad). *Id.* This element is not implicated by any of the issues on appeal, as there is no question that the Underlying Judgment for negligent supervision and breach of contract was in favor of Judgment Creditors against Triad.

- Second, that Amerisure's policies were in effect when the incident occurred. *Id.* This element is implicated by points one, two, three, four, and five, which relate to whether "property damage" as defined by the policy occurred within any Amerisure policy period.

6

- Third, that Amerisure's policies covered the damages awarded in the Underlying Judgment against Triad. *Id.* This element is implicated by points six, seven, and eight, which relate to whether Judgment Creditors' damages were caused by an "occurrence" as defined by the policy.

Judgment Creditors' ninth point on appeal implicates an issue as to which Amerisure bears the burden of proof—whether a policy exclusion applies to bar coverage. *Vill. at Deer Creek Homeowners Ass'n*, 432 S.W.3d at 239. Judgment Creditors claim the trial court erroneously declared the law when it found that the "your product" exclusion applied to bar coverage for Judgment Creditors' judgment.

Affirmance of the trial court on any one of these three coverage issues is dispositive of the appeal.

**Analysis**

**Points One, Two, Three, Four, and Five: "Property Damage"**

Judgment Creditors' first five points challenge the trial court's judgment that they failed to establish that the Underlying Judgment was for "property damages" as anticipated by Amerisure's policies. In the first point, Judgment Creditors claim it was error for the trial court to find that they failed to establish "property damage" that occurred within Amerisure's policy period. In the second point, they claim it was error for the trial court to find that all of Judgment Creditors' damages were fixed as of March 1, 2007. In points three, four, and five, they claim that the trial court erred in admitting the testimony of Randall Bernhardt and erred in finding that Judgment Creditors' damages were fixed as of March 1, 2007, based on Mr. Bernhardt's testimony.

Coverage A of Amerisure's CGL policies provides that Amerisure "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." The insurance applies to "property damage" "only if . . . [t]he . . . 'property damage' occurs during the policy period." The policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. *All such loss of use shall be deemed to occur at the time of the physical injury that caused it*; or

> b. Loss of use of tangible property that is not physically injured. *All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it*.

(Emphasis added.) Coverage A of Amerisure's Umbrella policies provides that Amerisure "will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of . . . 'property damage' to which this insurance applies." The limitation of the insurance to "property damage" occurring during the policy period and the definition of "property damage" are identical to that in the CGL policies.

Judgment Creditors assert that the "property damage" covered by the policy occurred in June 2008 when the crumbling, cracking, and deterioration of the parking lot manifested itself, not in March 2007, when the defective concrete was installed.

"An occurrence policy provides coverage for an event that occurs during the policy period, regardless of when a claim is asserted." *City of Lee's Summit v. Mo. Pub. Entity Risk Mgmt.*, 390 S.W.3d 214, 220 (Mo. App. W.D. 2012) (internal quotation omitted). "For an event to be a covered occurrence, the time of first actual damage must be within the effective dates of the policy." *Id.* In cases of progressive damage, coverage issues are determined at the time the initial property damage occurs, even if the damage is not apparent until later. *See D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 905-06 (Mo. banc 2010) (holding

8

coverage triggered when home is built on fill dirt rather than when cracks in the foundation appeared from progressive damage); *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 393-94 (Mo. App. E.D. 2007) (holding coverage triggered when infected fruit trees were delivered rather than when bacterial disease was discovered several years later); *Scottsdale Ins. Co. v. Ratliff*, 927 S.W.2d 531, 534 (Mo. App. E.D. 1996) (holding coverage triggered when termite inspection was conducted rather than when structural problems arose due to progressive damage from infestation). Amerisure's CGL policies expressly adopted this principle by providing that all loss "*shall be deemed to occur at the time of the physical injury that caused it.*" (Emphasis added.)

Judgment Creditors were injured in fact on March 1, 2007, the date City Cement finished installing the defective concrete. Even Judgment Creditors' expert, Dr. Avi Mor, testified in the Underlying Lawsuit trial that once the defective concrete was installed in March 2007, the only repair that could correct the defect was to remove and replace the concrete. Consistent with Dr. Mor's testimony, the judgment in the Underlying Lawsuit (which was drafted by Judgment Creditors' counsel) found that "the concrete . . . was defective at the time it was purchased and installed." The underlying judgment also found that Judgment Creditors' damages were fixed and complete when the concrete installation was completed, since the judgment awarded Judgment Creditors $2,077,071.30 in prejudgment interest, calculated on the entire underlying damage award, and accruing as of March 1, 2007. The award of prejudgment interest was based on the judgment's conclusion that the entirety of the Judgment Creditors' damages were liquidated as of that date. Because coverage under Amerisure's policies did not commence until August 1, 2007, the trial court correctly concluded that there was no "property damage" within any Amerisure policy period.

9

Judgment Creditors also assert that the trial court erred in finding that their damages were fixed as of March 2007, based on Mr. Bernhardt's expert testimony admitted over objection at the equitable garnishment trial. However, Bernhardt's testimony was, in all relevant aspects, nothing more than corroborative of the testimony by Judgment Creditors' expert, Dr. Avi Mor, at the trial leading to the Underlying Judgment. Both ultimately concluded that the concrete was defective at the time of installation and that it was irreparable, short of removal and replacement of the concrete. "In a court-tried case it is extremely difficult to predicate reversible error on the erroneous admission of evidence. Erroneous admission of evidence only requires reversal where the complaining party is *prejudiced*." *Sanders v. Ins. Co. of N. Am.*, 42 S.W.3d 1, 11 (Mo. App. W.D. 2000) (citation omitted) (emphasis added). Here, where Bernhardt's testimony was essentially corroborative of Dr. Mor's testimony (as well as the court's findings relating to the Underlying Lawsuit) from the trial leading to the Underlying Judgment, Judgment Creditors have not established any prejudice due to the admission of Bernhardt's testimony at the equitable garnishment trial. Thus, we need not and do not address whether Bernhardt's testimony was inadmissible at the equitable garnishment trial due to principles of collateral estoppel.

Points one, two, three, four, and five are denied. Furthermore, our ruling as to the first five points relied on is dispositive of this appeal; thus, we need not and do not address the remaining points on appeal.

**Conclusion**

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Alok Ahuja, Chief Judge, and J. Dale Youngs, Special Judge, concur.