**Wendi HAGAR, Karla Hagar, Hali Hagar and Staci Ross, by their next friend Carl Hagar, and Carl Hagar and Koni Hagar, Individually and as husband and wife, Respondents,**

v.

**WRIGHT TIRE & APPLIANCE, INCORPORATED, A Missouri Corporation, d/b/a Wright Audio, Video & Appliance, et al., Appellant.**

**No. WD 58084.**

Missouri Court of Appeals, Western District.

Nov. 7, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 2000.

Application for Transfer Denied Jan. 23, 2001.

Duane Edward Schreimann, Jefferson City, for appellant.

David Allen Masters, Macon, for respondents.

Before Presiding Judge LOWENSTEIN, Judge LAURA DENVIR STITH and Judge NEWTON.

LAURA DENVIR STITH, Judge.

Carl and Koni Hagar and their children were injured when a gas stove purchased from Wright Tire & Appliance caught fire, destroying the Hagars' home and its contents and causing them personal injuries. They recovered a $51,700 portion of their property damage from their property insurer, Shelter Mutual Insurance Company, and then sued Wright Tire and certain of its employees for their personal injuries and property damages. While that suit was pending, Shelter asked Wright Tire's insurer to reimburse it for the money it had paid the Hagars on their property damage claim, and the insurer did so without waiting for the underlying suit against

its insured (Wright Tire) to be resolved. Once that suit was finally resolved, resulting in a $244,111.69 verdict in favor of the Hagars, Wright Tire requested that it receive a credit on the judgment for the amount its insurer had already paid Shelter, but the trial court refused to allow the credit.

■ Wright Tire appeals, arguing it is entitled to a credit because it satisfied Shelter's subrogation interest in the judgment and because if it does not receive a credit, the Hagars may get a double recovery. We affirm the trial court's denial of a credit. Only the Hagars had the right to bring suit against Wright Tire. Shelter held only a subrogation interest, and that interest only entitled it to reimbursement of amounts it paid the Hagars out of any judgment the Hagars obtained from Wright Tire. Shelter was never entitled to a credit on the judgment, and it never held legal title to any part of the Hagars' property damage claim. Shelter therefore had no right to try to settle that claim with Wright Tire's insurer behind the backs of the Hagars, and without their consent, as occurred here. The fact that Shelter did so could not give Wright Tire's insurer any rights against the Hagars. The burdens caused by Wright Tire's insurer's decision to settle a claim brought by Shelter which Shelter had no right to bring should remain on that insurer. Those burdens should not be shifted to the Hagars, who were specifically and purposely excluded from those settlement negotiations.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Carl and Koni Hagar purchased a gas-stove appliance from Appellant Wright Tire & Appliance, Inc. Wright Tire & Appliance agreed to deliver the gas stove and install it in the Hagars' home as part of the sale. The installation included connecting the stove to the LP gas source.

On August 16, 1994, two Wright Tire & Appliance employees, Appellants Shannon McQuarry and Nikolaus Nieponski, deliv-

ered the stove to the Hagars' residence and installed it. Shortly thereafter, a fire started. This fire destroyed the Hagars' home and its contents, including property belonging to Respondents Carl and Koni Hagar and their children, Staci Ross, Wendi Hagar, Karla Hagar, and Hali Hagar (hereinafter referred to collectively as "the Hagars"), and caused personal injury to the Hagars. They thereafter filed suit against Wright Tire & Appliance, Shannon McQuarry, and Nikolaus Nieponski (hereinafter referred to collectively as "Wright Tire"), alleging that their negligence caused the fire.

Prior to the August 16, 1994, fire, Mr. and Ms. Hagar had purchased property insurance on their home and its contents from Shelter Mutual Insurance Company. Following the fire, the Hagars filed a claim with Shelter for property damage. Shelter and the Hagars negotiated on issues regarding the damages, and ultimately Shelter paid the Hagars $51,700 in settlement of their claim for property loss resulting from the fire. In exchange for the payment by Shelter, the Hagars released Shelter from any future claims based on their fire loss.

In addition to providing coverage for property loss, page 16 of the insurance contract contained a subrogation clause that stated as follows:

> **OUR RIGHT TO RECOVER PAYMENT.** After making payment under this policy, **we** will have the right to recover to the extent of our payment from anyone held responsible. This right will not apply ... if **you** have waived it in writing prior to loss. The **Insured** will do whatever is required to transfer this right to **us.**

(emphasis in original). This clause in the contract between the Hagars and Shelter gave the Hagars the right to pursue recovery from a third party, but gave Shelter the right to recover from the Hagars to the extent of its payment to them "from

anyone held responsible" for the Hagars' property losses.

After receiving the $51,700 payment from Shelter for certain of their property damages, the Hagars filed suit against Wright Tire for their entire property loss and for their personal injuries resulting from the fire. On June 20, 1995, Shelter also wrote to counsel for the Hagars, stating:

"We have been informed that you have filed suit on behalf of Mr. and Mrs. Carl Hagar because of their fire loss of August 16, 1994, *for damages which exceed their insurance coverage with us.* The purpose of this letter is to remind you that we have expended $51,700.00 in behalf of [the Hagars] and intend to recover 100% of this amount from Continental Western when final settlement is made."

(emphasis added).

Although the emphasized portion of this letter suggests that the Hagars had sued only for that portion of their losses which exceeded the $51,700 paid them by Shelter, their suit in fact sought recovery of all of their property damages as well as all of their personal injury damages. This is the proper procedure under Missouri law, which has adopted the collateral source rule, under which suit may be brought against the wrongdoer for plaintiffs' entire damages without deduction for the amounts plaintiffs have received from a collateral source, such as property insurance. *Washington by Washington v. Barnes Hospital,* 897 S.W.2d 611, 619 (Mo. banc 1995); *Duckett v. Troester,* 996 S.W.2d 641, 647–48 (Mo.App. W.D.1999). The policy behind the rule is that a tortfeasor should not receive any of the benefit arising from the property owner's foresight in paying for insurance coverage. *Id.*

A few days after receiving Shelter's letter, David Masters, the Hagars' attorney, thus responded:

"I have your letter ... I understand your intentions and *to the extent that your company is entitled to subrogation*

*we will honor those subrogation rights. It would of course be expected that you would share in the cost of recovery."*

(emphasis added).

In reply to Hagars' letter, on June 27, 1995, Shelter wrote a letter to the Hagars' attorney informing him that it did not intend to seek any part of the Hagars' recovery in their suit against Wright Tire, but that it expected to be reimbursed by Wright Tire's insurer, Continental, for the value of its subrogation interest once the Hagars and Wright Tire settled their suit, stating:

"Our intentions are only to advise you of our subrogation rights against Continental Western Insurance Company for the amount paid to our insured [the Hagars]. *We have been in contact with Continental Western and fully expect to be reimbursed once settlement has been made with our insured* [the Hagars]. Therefore, we are not asking you to assist in recovering our payment and we will not share in any cost incurred by you or our insured."

(emphasis added).

In accordance with its statements in this letter, Shelter provided no assistance to the Hagars in their suit against Wright Tire. Instead, Shelter wrote Continental directly and asserted that Continental was liable to it for the entire $51,700 value of its subrogation interest that arose out of its settlement of the Hagars' property damage claim. According to the parties' stipulation, Shelter and Continental had an arbitration agreement requiring the arbitration of this and other "intra-insurance" claims, that is, claims between insurance companies. Shelter did not invite the Hagars to be part of this arbitration. To the contrary, as noted above, in its June 27, 1995, letter to the Hagars Shelter had specifically advised them that it was proceeding on its own and did not want or need their assistance in protecting its subrogation interest.

Although Shelter's June 27, 1995, letter to the Hagars' attorney had stated that Shelter would seek reimbursement of its subrogation interest from Continental only when the Hagars settled their claim against Wright Tire, Shelter and Continental proceeded to arbitration without waiting for this settlement. On October 2, 1996, in return for a payment from Continental of $46,700, Shelter gave Continental a full release of Shelter's claim against Wright Tire and Continental for any damages *Shelter* had sustained as a result of the Hagars' fire loss of August 16, 1994. The release further provided that:

> This release is given in good faith as a voluntary settlement by the undersigned of a disputed claim and shall not discharge any alleged tort-feasor other than mentioned herein for the damages and injuries sustained by the undersigned. The undersigned releases and discharges the released parties ... from any and all subrogation claims which the undersigned currently has or may incur in the future pertaining to the injuries, damage and losses outlined above.

The release was signed by "Tracy Odneal, Representative of Shelter Mutual Ins., as Subrogee of Carl & Koni Hagar." Following this settlement of Shelter's purported subrogation claim against Continental, Wright Tire amended its answer in the Hagars' suit to plead that any recovery by the Hagars should be reduced by any amounts paid by Wright Tire or on its behalf to the Hagars or to Shelter.

At trial, the Hagars continued to seek full recovery for the personal injuries and property damage they sustained in the fire. In accordance with the collateral source rule, *Ford v. Gordon*, 990 S.W.2d 83, 85 (Mo.App. W.D.1999), no evidence was presented to the jury that the Hagars had received $51,700 in insurance coverage from Shelter. The jury returned a verdict for the Hagars in the aggregate amount of $244,111.69, including $164,111.69 in property damages and $80,000 in personal injury damages.

After the jury returned its verdict, Wright Tire moved for a credit of $46,700, the amount of the payment made by its insurer, Continental, to the Hagars' property insurer, Shelter, in the settlement of the claim Shelter had asserted against it. The parties stipulated to the facts relevant to the credit issue. Following review of the stipulation and the arguments of the parties, the court denied the motion for a credit and entered judgment for the Hagars in the full amount of the jury verdict, $244,111.69. Wright Tire now appeals the trial court's denial of its motion for a $46,700 credit against the judgment.

## II. STANDARD OF REVIEW

The parties have stipulated to the relevant facts in this Court, and this appeal solely concerns the legal issue whether Wright Tire was entitled to a $46,700 credit on the Hagars' judgment against it because its insurer, Continental, had paid that amount to the Hagars' property insurer, Shelter, in settlement of Shelter's purported subrogation claim against it. We determine such questions of law *de novo*. *State v. Goodrich*, 12 S.W.3d 770, 772 (Mo. App. W.D.2000).

## III. Continental has No Right to A Credit in the Amount of Its Settlement with Shelter Because Shelter Had No Authority to Sue Continental Directly Since it Held Only a Subrogation Interest

In its first point on appeal, Wright Tire claims that the trial court erred in entering judgment for the Hagars and against Wright Tire in the amount of $244,111.69. It argues that the trial court should have granted Wright Tire's motion for a credit against the judgment equal to Continental's $46,700 payment to Shelter in settlement of the subrogation claim Shelter had asserted against Continental. It further suggests that the trial court's denial of this credit resulted in a windfall to the Hagars and so cannot be tolerated.

■ The resolution of this issue lies in Missouri law governing an insurer's subrogation rights against its insured, and an insured's rights to maintain a cause of action against a tortfeasor. Unlike some states, which provide that legal title to a property damage claim passes to the injured party's insurer once the insurer pays the injured party's claim, Missouri provides that the legal title to the cause of action remains in the insured, and that the insurer's only interest is an equitable right to subrogation:

> Subrogation ... arises by operation of law (in the casualty insurance context) when the insurance company under its contract obligation pays all or a part of the property damage incurred by its insured. *The legal title to the cause of action remains in the insured. The exclusive right to sue for the entire loss remains with the insured, State Farm Mutual Automobile Ins. Co. v. Jessee,* 523 S.W.2d 832, 834 (Mo.App.1975), though he will hold the proceeds for the insurer.

*Farmers Ins. Co., Inc. v. Effertz,* 795 S.W.2d 424, 426 (Mo.App. W.D.1990) (emphasis added).

■ The only relevant exception to this rule is when the insured assigns his or her property damage claim against the tortfeasor to the insurer. *Id.* "If a claim has been assigned, there is a complete divestment of all rights from the assignor and the vesting of those rights in the assignee." *Klein v. General Elec. Co.,* 714 S.W.2d 896, 902 (Mo.App. E.D.1986). An assignment thus gives the insurer full legal title to the claim and permits the insurer to pursue it against the tortfeasor. *Effertz,* 795 S.W.2d at 426.

■ By contrast, if there has not been an assignment, and the insurer holds only a subrogation interest, then under Missouri law "an equitable right passes to the subrogee and the legal right to the claim remains in the subrogor." *Klein,* 714 S.W.2d at 902. In a subrogation situation, since the insured still holds the legal right

to the claim, the insurer cannot sue the tortfeasor directly but must wait and assert its subrogation interest against any recovery the insured makes against the tortfeasor. As *Effertz* summarized the rule:

> The firmly established rule in Missouri ... is that when an insurer pays a property loss, then its right to maintain suit against the tort-feasor depends upon whether it receives from the insured an assignment of the whole claim as compared with merely rights of subrogation. If the insurer receives such an assignment, then it has the exclusive right to maintain suit against the tort-feasor for the entire claim including any deductible item. On the other hand, if the insurer's rights are simply those of subrogation, then legal title remains in the insured and he retains the exclusive right to bring suit.

795 S.W.2d at 426, *citing, Jessee,* 523 S.W.2d at 834.

■ These rules are dispositive of Continental's claim here. The only provision of the Hagars' contract with Shelter which the parties suggest is relevant to the issue before us is the "right to recover payment" clause. That clause states:

> **OUR RIGHT TO RECOVER PAYMENT.** After making payment under this policy, **we** will have the right to recover to the extent of our payment from anyone held responsible. This right will not apply ... if **you** have waived it in writing prior to loss. The **Insured** will do whatever is required to transfer this right to **us.**

(emphasis in original). Continental does not contend that this is an assignment clause, and indeed it is not, for, as noted, an assignment occurs only when one party transfers to another "all or part of one's property, interest, or rights. It is a right in the property itself." *Ford Motor Credit Co. v. Allstate Ins. Co.,* 2 S.W.3d 810, 812 (Mo.App. W.D.1999). *See also Schaffer v. Board of Education of City of St. Louis,*

869 S.W.2d 163, 168 (Mo.App. E.D.1993). The clause quoted above does not purport to assign the Hagars' rights against Wright Tire to Shelter. Rather, it simply constitutes an agreement that Shelter will have the right to recover the money it paid the Hagars *"from anyone held responsible."* This clause thus only gives Shelter a right to recover once the tortfeasor has been held responsible for the Hagars' injuries. Since it does not constitute an assignment, under Missouri law the sole right to sue Wright Tire remained with the Hagars.

Shelter and Continental both recognized below that any claim that Shelter had was in subrogation only. Thus, Continental stipulated below that, "Following the payment by Shelter to plaintiffs, Shelter asserted a subrogation claim against defendants." Similarly, when Shelter wrote the Hagars' counsel Shelter asserted only that it would recover its payments to the Hagars out of any *final settlement* clearly referring to the settlement of the Hagars' suit against Wright Tire. Similarly, in its later letter Shelter stated that the intent of its correspondence with the Hagars' counsel was to advise counsel "of our *subrogation rights* against Continental," and Shelter signed the settlement with Continental in its capacity as the Hagars' subrogee.

■ Thus, because no one contends that the Hagars assigned their rights against Wright Tire to Shelter, and because the facts would not support such a claim, Shelter had no right to make a direct claim against either Continental or Wright Tire for reimbursement of the monies it had paid the Hagars. The legal right to sue Wright Tire remained solely in the Hagars. Shelter had an equitable right to subrogation from the Hagars out of any recovery the Hagars made against Wright Tire. Shelter had no right to a "credit" on the Hagars' judgment against Wright Tire, however, and Continental could not acquire the right to such a credit by settling Shelter's claim against it. Were we to

hold otherwise, we would, in effect, be permitting Shelter to prosecute that portion of the Hagars' claims represented by the $51,700 which Shelter had paid the Hagars under their insurance contract. Yet, Shelter held only an equitable interest in the claim, not legal title to it, and, as just discussed, therefore had no right to prosecute any portion of the Hagars' claim against Continental or Wright Tire directly. Since Shelter had no right to prosecute this claim directly, it certainly had no right to arbitrate and settle the claim directly, without the Hagars' consent. This is, however, exactly what it purported to do.

■ Wright Tire argues that we must nonetheless give it a credit because otherwise we would, in effect, allow the Hagars a double recovery; they would be able to recover their full damages from Wright Tire, yet still retain the proceeds of their insurance settlement with Shelter, while Continental would have paid $46,700 of the Hagars' damages twice once to them and once to Shelter when it settled Shelter's claim against it. While it is true that Continental may end up paying $46,700 more than it needed to pay, that is not the fault of the Hagars and it is not their responsibility to voluntarily credit Wright Tire this amount so that its insurer can avoid this extra liability. The cause of Continental's problems was its decision to settle Shelter's subrogation claim with Shelter alone, as if Shelter had received an assignment of legal title to that portion of the Hagars' property damage claim.

In retrospect, it is evident that Continental would have been better served by defending against Shelter's subrogation claim by noting that, under Missouri law, Shelter had no right to subrogation until its insureds received a judgment against Continental's insured, and, even then, Shelter's rights would be a subrogation right as against the Hagars once the judgment was entered. Neither Wright Tire nor Continental would ever be entitled to a credit against the judgment for the

amount of the insurer's subrogation interest.[1] However, when Continental settled Shelter's claim for $46,700, it recognized that it was settling a disputed claim, and perhaps it was for this reason that Shelter accepted $5,000 less than the $51,700 it had already paid to the Hagars. In settling a disputed claim, Continental took its chances that the courts would ultimately find that Shelter's claim was without merit. It has no right to now seek to indemnify itself from the effects of an unfavorable settlement by seeking a credit on the Hagars' judgment. For these reasons, we reject Wright Tire's claim that it was entitled to a credit against the judgment for the amount Wright Tire's insurer paid to settle Shelter's subrogation claim against it.

## IV. CONTINENTAL DID NOT PAY SHELTER AS AN ACCOMMODATION

■ In its second point on appeal, Wright Tire argues that the trial court erred in denying Wright Tire's motion for a credit of $46,700 against the judgment because Continental's payment to Shelter on behalf of Wright Tire was an "accommodation payment" to the Hagars, or was paid on their behalf, and thus the payment should be deductible from the final judgment against Wright Tire.

Section 490.710 RSMo 1994 states the circumstances under which a payment will be considered an accommodation payment to the plaintiff, which should be a credit on any judgment against the tortfeasor:

1. **No advance payment or partial payment of damages, predicated on possible tort liability, as an accommodation to an injured person, or on his behalf to others,** or to the heirs at law or dependents of a deceased person, of medical expenses, loss of earnings and other actual out-of-pocket expenses, because of an injury, death claim, property loss or potential claim against any person shall be admissible into evidence as an admission against interest or admission of liability by such party or self-insurer, or if paid by an insurer of such party, as the insurer's recognition of such liability with respect to such injured or deceased person, or with respect to any other claim arising from the same accident or event.

2. **Any payments made as provided in subsection 1 of this section shall constitute a credit and be deductible from any final settlement made or judgment rendered with respect to such injured or deceased person.** In the event of a trial involving such a claim, the fact that such payments have been made shall not be brought to the attention of the jury.

*Id.* (emphasis added).

In order to qualify for this credit, the person seeking it must show that the payment was, in fact, an accommodation payment to the plaintiff, or was otherwise made on behalf of the plaintiff to others. Clearly, Continental did not make a payment directly to the Hagars. But, it argues, it should be considered to have made a payment "on behalf of" the Hagars, since in return for Continental's payment to Shelter, Shelter released all of its subrogation claim. Thus, Continental asserts, Shelter can no longer claim that it has a

---

1. Such a credit would only arise in the case of an accommodation payment by the tortfeasor, a situation not applicable here for the reasons discussed in the remainder of this opinion, or where, for instance, a joint tortfeasor has paid a part of the damages in settlement of a claim. The collateral source doctrine would preclude a tortfeasor from receiving a credit for the amount of an insurance payment received by the insured under the insured's policy because a " 'wrongdoer is not entitled to have the damages to which he is liable reduced by proving that [the] plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or … the wrongdoer may not be benefited by collateral payments made to the person he has wronged.' " *Gaunt v. State Farm Mut. Auto. Ins. Co.,* 24 S.W.3d 130, 134 (Mo.App. W.D.2000), *quoting, Washington,* 897 S.W.2d at 619. *See also Duckett,* 996 S.W.2d at 647–48.

subrogation interest in part of the Hagars' judgment against Wright Tire.

A similar situation arose in *Weindel v. DeSoto Rural Fire Protection Ass'n, Inc.,* 765 S.W.2d 712 (Mo.App. E.D.1989). In *Weindel,* the parties stipulated that: 1) the Weindels' homeowner's insurer paid $36,000 to the Weindels due to a fire on their property; and 2) the DeSoto Rural Fire Protection Association paid $20,000 to the Weindels' insurer as subrogee of the Weindels. *Id.* at 716. There, as here, the court refused to grant defendant a credit based on Section 490.710 for a payment defendant made to plaintiff Weindels'. insurer because the stipulated facts did not show that the payment by the Association's insurer was made as an accommodation to the Weindels or in their behalf, in that there was "no showing that the Weindels owed money to [their insurer] and, if they did, that they directed the Association's insurer to make a payment on their behalf." *Id.*

Similarly, here, the Hagars did not owe money to Shelter at the time that Continental paid Shelter. Any obligation to Shelter would have arisen only if they won their lawsuit against Wright Tire, a suit that had not, at that point, been tried. Moreover, even had the Hagars owed money to Shelter, they did not direct Continental to pay it for them. The Hagars were, to the contrary, specifically excluded from the arbitration and settlement process. Continental did not contact them at all, and Shelter, in its June 27, 1995, letter, basically told the Hagars to mind their own business and not to get involved in Shelter's and Continental's resolution of Shelter's claim against Continental. The payment may have incidentally benefited the Hagars, but it was not made "on their behalf."

Wright Tire additionally argues, without citing any relevant support in the case law, that the fact that its acts benefited the Hagars entitles it to a credit, because oth-erwise the Hagars will receive a windfall. What Wright Tire fails to recognize is that, since its insurer had no legal obligation to make its payment to Shelter and since the payment was not made as an accommodation to the Hagars or on their behalf, Continental in effect simply acted as a volunteer in paying Shelter's subrogation demand, without either the knowledge or consent of the Hagars. The Hagars may have had defenses to Shelter's subrogation claim, or Shelter may not have pursued it against them, or may have settled it for a lesser sum. Certainly, the Hagars have made clear they would have argued that Shelter was responsible for paying its ratable share of the costs and attorneys' fees incurred in bringing suit against Wright Tire before Shelter could recover any of its subrogation interest, and Shelter unequivocally refused to assist in paying those fees and other costs. In any event, the Hagars did not authorize Continental to settle any claim Shelter may have had against them, and the fact that Continental did so without the Hagars' knowledge or consent does not create a legal basis for Continental to seek reimbursement from the Hagars for that payment in the form of a credit on the judgment.

For all of these reasons, the judgment is affirmed.

Presiding Judge HAROLD L. LOWENSTEIN and Judge THOMAS H. NEWTON, concur.