

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| BARBARA S. THOMAS, | ) | No. ED111064 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Lynne R. Perkins |
| EMIR RAMUSHI, | ) | |
| | ) | |
| Respondent. | ) | Filed: June 20, 2023 |

### Introduction

Barbara S. Thomas ("Thomas" or "Appellant") appeals the judgment of the Circuit Court of the City of St. Louis awarding her $375.45 in damages but allowing the affirmative defense of credit/set-off asserted by Emir Ramushi ("Ramushi" or "Respondent"). Appellant raises two points on appeal. In Point I, Appellant argues the trial court erred in allowing Respondent's credit/set-off defense because Appellant's insurer lacked authority to settle her claims. In Point II, Appellant argues the trial court erred in allowing Respondent's credit/set-off defense because this decision impermissibly relied on collateral source evidence.[1]

Because Liberty Mutual lacked authority to settle Appellant's claims on her behalf, the trial court erroneously credited the American Automobile Association's ("AAA") reimbursement

---

[1] We refer to this defense more simply as a "credit."

to Liberty Mutual against Respondent's liability to Appellant. We grant Point I. Because evidence of AAA's payment to Liberty Mutual violated the collateral source rule, we grant Point II.

We reverse.

**Factual and Procedural History**

On July 2, 2020, Respondent rear-ended Appellant in St. Louis City. Respondent does not dispute his full liability for the collision. Appellant's insurer, Liberty Mutual, deemed her 1998 Cadillac STS a total loss. Liberty Mutual paid Appellant $3,690.50.[2] After an arbitration, Liberty Mutual received $3,690.50 from Respondent's insurer, AAA. This amount represented $3,190.50 for the car's value and $500.00 for Appellant's deductible.[3]

On November 23, 2020, Appellant sued Respondent. Appellant pled she suffered the loss of her car and approximately $400.00 in rental car expenses. On April 21, 2021, Respondent filed an answer alleging Appellant was at fault and alternatively raised failure to mitigate as an affirmative defense. On February 25, 2022, Appellant amended her petition to add an allegation she "incurred the cost of repair of her vehicle." On April 8, 2022, Respondent filed an amended answer alleging "[t]here has been a settlement, accord and satisfaction" on Appellant's property damage claim in that Respondent's insurer, AAA, paid Appellant's insurer, Liberty Mutual, $3,690.50 for the total loss of her vehicle and her deductible.

The trial court held a bench trial on April 14, 2022. Appellant alleged the payments arranged between AAA and Liberty Mutual occurred without her knowledge or consent. Appellant testified the fair market value of her car before the collision was between $12,500.00 and $13,000.00 and introduced valuations of similar cars ranging from $8,900.00 to $10,000.00.

---

[2] The trial court's judgment suggests AAA paid Liberty Mutual before Liberty Mutual paid Appellant, but both parties argue AAA "reimbursed" Liberty Mutual.

[3] It is not clear from the record why Liberty Mutual received "reimbursement" for Appellant's deductible.

Appellant testified the fair market value of her car after the collision was between $3,500.00 and $4,000.00, and she paid $1,700.00 in repairs and $373.00 in rental car expenses.[4] Respondent sought a credit against his liability for AAA's $3,690.50 payment to Liberty Mutual, and argued Appellant failed to demonstrate damages exceeding that amount.

On September 14, 2022, the trial court entered judgment for Appellant, awarding her $375.45 in car rental expenses. The trial court found Appellant did not demonstrate damages for the loss of her car exceeding $3,690.50,[5] because Appellant introduced conflicting valuations and the trial court heard "a spectrum of opinions regarding the value of [Appellant's] car immediately before and after the collision." On October 11, 2022, the trial court granted Appellant's motion to amend the judgment, clarifying "'[Respondent's] affirmative defense seeking credit/set-off is granted.'"

This appeal follows.

## Standard of Review

"In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Baker v. Dir. of Revenue*, 620 S.W.3d 102, 104 (Mo. App. W.D. 2021) (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010)). We review *de novo* whether a trial court erroneously declared or applied the law. *Allsberry v. Flynn*, 628 S.W.3d 392, 395 (Mo. banc 2021) (citing *Adams v. Certain Underwriters at Lloyd's of London*, 589 S.W.3d 15, 26 (Mo. App. E.D. 2019)).

---

[4] The amount of rental expenses is inconsistently stated in the record. The trial court awarded $375.45 in rental car expenses to Appellant. Appellant does not challenge this amount on appeal.

[5] To the extent this finding is implicit in the trial court's judgment, Rule 73.01 instructs "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." This finding is implicit in the judgment because the trial court did not award Appellant any damages for the loss of her car exceeding the amount credited against Respondent's liability.

3

**Discussion**

*Point I: Authority to Settle*

*Argument*

In Point I, Appellant argues the trial court erred in allowing Respondent's credit/set-off affirmative defense because her insurer lacked authority to settle her claims and Respondent's liability is not diminished by sums paid to Liberty Mutual. Appellant argues accord and satisfaction is inapplicable because Respondent did not demonstrate a "meeting of the minds," or proof payment was tendered on "the express condition that it be accepted in full satisfaction of the claim." *Clark v. Kinsey*, 488 S.W.3d 750, 762 (Mo. App. E.D. 2016).

Appellant notes "Missouri law distinguishes between subrogation rights and assignment rights." *State Farm Mut. Auto. Ins. Co. v. Jessee*, 523 S.W.2d 832, 834 (Mo. App. W.D. 1975). Under subrogation, the insured retains legal title to the claim and the exclusive right to pursue the tortfeasor. *Farmers Ins. Co., Inc. v. Effertz*, 795 S.W.2d 424, 426 (Mo. App. W.D. 1990). Appellant argues the insured holds the proceeds for the insurer and the insurer has no right to arbitrate and settle the insured's claim directly. *Hagar v. Wright Tire & Appliance, Inc.*, 33 S.W.3d 605, 611 (Mo. App. W.D. 2000). Here, Appellant argues her insurer had no power to seek a payment or settlement without her consent because she did not assign her claims to it. *Id.* Because her insurer did not have authority to settle her claims, Appellant contends the trial court erred in allowing Respondent's credit/set-off defense.

Appellant argues Respondent "exhibits a complete misunderstanding of who can present a subrogation claim, to whom it can be presented, and when it can be presented," because subrogation only exists between an insured and their insurer. *Keisker v. Farmer*, 90 S.W.3d 71, 74

(Mo. banc 2002). Appellant argues a tortfeasor may not receive a credit where the defendant's insurer reimburses the plaintiff's insurer for sums it paid to the plaintiff. *Hagar*, 33 S.W.3d at 610.

Respondent argues the trial court properly credited him for sums paid by his insurance company to Appellant's insurance company because when a plaintiff "receives a pretrial settlement that partially compensates his claim, the trial court will take any prior payments into consideration and will credit them on the damages assessed . . . . " *McDonald v. Ins. Co. of State of Pa.*, 460 S.W.3d 58, 65 (Mo. App. W.D. 2015) (quoting *Moore Auto. Grp., Inc. v. Lewis*, 362 S.W.3d 462, 468 (Mo. App. E.D. 2012)). Accordingly, Respondent argues, a defendant may seek to "offset any judgment against it by any amounts already received by the plaintiff as compensation" for the same wrong. *Id.* at 65–66. Respondent contends AAA's payment to Liberty Mutual was not an unauthorized settlement but was instead a reimbursement to Liberty Mutual. Respondent asserts no assignment occurred because "[t]his present case involved subrogation, which is legal." Respondent argues subrogation occurred because Liberty Mutual paid Appellant for the fair market value of her car, and then obtained the same amount from AAA. Respondent argues the trial court's allowance of his affirmative defense merely precluded double recovery, and Appellant "has not cited to any case law or statutes where payment of damages prior to suit was barred under Missouri Law." Respondent cites only *McDonald*, without addressing or distinguishing Appellant's cases.

*Analysis*

Appellant's reliance on *Hagar* is persuasive. "Unlike some states, which provide that legal title to a property damage claim passes to the injured party's insurer once the insurer pays the injured party's claim, Missouri provides that the legal title to the cause of action remains in the insured . . . . " *Hagar*, 33 S.W.3d at 610. Unless the insured *assigns* their claim to the insurer, the

insurer's only interest is an equitable right to subrogation. *Id*. (citing *Effertz*, 795 S.W.2d at 426) (emphasis added). Respondent concedes Liberty Mutual was not assigned Appellant's claims and we are directed to nothing in the record suggesting Appellant authorized the settlement of her claims.

"In a subrogation situation," the insured retains the legal right to their claim and "the insurer cannot sue the tortfeasor directly but must wait and assert its subrogation interest against any recovery the *insured* makes against the tortfeasor." *Id*. (emphasis added). "The firmly established rule in Missouri" provides "if the insurer's rights are simply those of subrogation, then legal title remains in the insured and he retains the exclusive right to bring suit." *Id*. (quoting *Effertz*, 795 S.W.2d at 426). Without an assignment, a plaintiff's insurer has "no right to make a direct claim" against the tortfeasor or his insurer for reimbursement of the sums it paid to the plaintiff. *Id*. at 611. The plaintiff's insurer "certainly [has] no right to arbitrate and settle the claim directly," without the plaintiff's consent. *Id.* We disagree with Respondent's position a credit against his liability "simply precluded double recovery, which would have resulted in a financial windfall for [Appellant]." Appellant's potential double recovery is solely the concern of her insurer. *McDonald*, 460 S.W.3d at 65 n.1. Liberty Mutual's subrogation right deals with any potential double recovery Appellant may receive.

Respondent's lone case authority, *McDonald*, provides a defendant may be permitted "to offset any judgment against it by any amounts already received by the plaintiff as compensation for that wrong." *Id*. at 65. *McDonald* also states: when "a plaintiff receives a pretrial settlement that partially compensates his claim, the trial court will take any prior payments into consideration and will credit them on the damages assessed . . . . " *Id.* In *McDonald*, there was no dispute the plaintiffs settled with two insurers. One insurer was the plaintiffs' property insurer. The third

6

insurer sought a credit against its liability, asserting the two settlements partially compensated the same harm. The Western District specifically held the third insurer was not entitled to a credit for the settlement paid by the plaintiffs' own insurer under the collateral source rule. *Id. McDonald* did not provide a tortfeasor may receive a credit for sums paid by a plaintiff's property insurer, it held the exact opposite. *Id.* The Western District, in *McDonald*, included an important caveat, in harmony with its previous holding in *Hagar*: "[t]o the extent that [respondent] is concerned about [appellants] receiving a double recovery for their property damage, we note that such a concern lies with the [appellants'] insurer and not with [respondent]." *McDonald*, 460 S.W.3d at 65 n.1.

It is Appellant's exclusive right to sue Respondent for her damages. *Effertz*, 795 S.W.2d at 426 (citing *Jessee*, 523 S.W.2d at 834) ("The exclusive right to sue for the entire loss remains with the insured . . . . though he will hold the proceeds for the insurer."). If Appellant obtains a double recovery, Liberty Mutual may pursue its subrogation right against Appellant. *McDonald*, 460 S.W.3d at 65 n.1. But the unauthorized actions of the parties' insurers do not divest Appellant of her ability to seek a full recovery from Respondent, who has no right to a credit against his liability to Appellant. *Hagar*, 33 S.W.3d at 610.

Because Appellant did not assign her claims to Liberty Mutual or give Liberty Mutual authority to settle her claims, Appellant retained the exclusive right to pursue her claims and Respondent may not receive a credit for the payment AAA made to Liberty Mutual. The trial court misapplied the law in crediting Respondent for the payment made by AAA.

Point I is granted.

*Point II: Collateral Source*

*Argument*

In Point II, Appellant argues the trial court erred in allowing Respondent's credit/set-off

affirmative defense because this decision impermissibly relied on collateral source evidence. Appellant argues Respondent may not receive a credit for the payment made to Appellant from Liberty Mutual, which in turn was paid by AAA. Appellant argues the "sole purpose that [Respondent] gave for why AAA paid Liberty Mutual was to reimburse Liberty Mutual" for its payment to Appellant. Appellant contends a defendant cannot benefit from collateral payments to the person he wronged. *McDonald*, 460 S.W.3d at 64. Appellant notes insurance payments received by the plaintiff cannot ordinarily mitigate the wrongdoer's damages. *Iseminger v. Holden*, 544 S.W.2d 550, 552 (Mo. banc 1976).

Respondent argues "special damages" paid by his insurer before trial are not recoverable by Appellant under section 490.715.2 RSMo Cum. Supp. 2020. Respondent argues he is "entitled to deduct and receive a credit for such payments" under sections 490.710 RSMo 2016 and 490.715.3, and the trial court properly credited the $3,690.50 AAA paid to Liberty Mutual. Respondent argues this arrangement did not violate the collateral source rule because "[n]ot only does the statute allow for evidence of payments made by Defendant or on his behalf, but it also states that Defendant is entitled to deduct and receive credit for those payments."

*Analysis*

In addition to our reasoning in Point I, a credit against Respondent's liability reflecting AAA's payment to Liberty Mutual violates the collateral source rule. The collateral source rule "prevents a tortfeasor from reducing his or her liability to a plaintiff by proving that payments were made to the plaintiff by a collateral source." *Deck v. Teasley*, 322 S.W.3d 536, 538 (Mo. banc 2010) (citing *Smith v. Shaw*, 159 S.W.3d 830, 832 (Mo. banc 2005)). A tortfeasor "may not be benefited by collateral payments made to the person he has wronged." *McDonald*, 460 S.W.3d at 65 (quoting *Collier v. Roth*, 434 S.W.2d 502, 507 (Mo. 1968)). "The rationale for such application

8

of the collateral source rule is that 'plaintiffs who contract for insurance or other benefits with funds they could have used for other purposes are entitled to the benefit of their bargain.'" *Id.* (quoting *Porter v. Toys 'R' Us-Delaware, Inc.*, 152 S.W.3d 310, 320 (Mo. App. W.D. 2004), *as modified* (Nov. 23, 2004)). Because Respondent describes AAA's payment to Liberty Mutual as "a reimbursement of a payment [Appellant] had received for her claim prior to this lawsuit," his theory for a credit depends on evidence of Liberty Mutual's payment to Appellant. This is not permissible. *Id.* (holding, under the collateral source rule, respondent could not obtain a credit for a payment made by the appellant's collateral source).

We are unpersuaded by Respondent's reliance on sections 490.710 and 490.715. Section 490.710 "states the circumstances under which a payment will be considered an accommodation payment to the plaintiff, which should be a credit on any judgment against the tortfeasor[.]" 33 S.W.3d at 613. In *Hagar*, a case in which the plaintiff was "specifically excluded from the arbitration and settlement process," the Court held the defendant was not entitled to a credit for a payment from the defendant's insurer to the plaintiff's insurer. *Id*. Here, Respondent may not receive a credit under section 490.710 because Respondent likewise does not demonstrate AAA's payment to Liberty Mutual was "an accommodation payment to the plaintiff, or was otherwise made on behalf of the plaintiff to others." *Id.* at 612. "In order to qualify for this credit, the person seeking it must show that the payment was, in fact, an accommodation payment to the plaintiff, or was otherwise made on behalf of the plaintiff to others." *Id.* Because Respondent does not demonstrate Appellant had any existing debt to Liberty Mutual discharged by AAA's payment to Liberty Mutual, AAA's payment to Liberty Mutual was not an accommodation payment entitling Respondent to a credit. *Id.* at 613 ("Any obligation to Shelter would have arisen only if they won their lawsuit against Wright Tire[.]"). AAA's payment to Liberty Mutual was not a payment made

to Appellant for Appellant's damages, but a premature payment to Liberty Mutual for its subrogation interest, which did not yet exist.

Respondent does not demonstrate section 490.715 applies, either. Subsection 2 provides: "if prior to trial a defendant or their insurer . . . . pays all or part of the plaintiff's special damages . . . . then any portion of plaintiff's claim for special damages" satisfied by the payment are "not recoverable from that defendant." 490.715.2. As discussed, *Hagar* holds the money paid by AAA to Liberty Mutual was not paid to Appellant or on her behalf. 33 S.W.3d at 613. It therefore follows this payment did not pay "all or part of" Appellant's special damages, so section 490.715.2 does not apply. Further, section 490.715.3 provides the defendant who made the payments described in subsection 2, if included in plaintiff's claim for special damages at trial, "shall be entitled to deduct and receive a credit for such payments . . . . as provided for in section 490.710." Again, as discussed, *Hagar* provides AAA is not entitled to a credit under section 490.710. *Id*. Respondent may not receive a credit under either sections 490.710 or 490.715.

As discussed in Point I, the payment from AAA to Liberty Mutual did not satisfy Appellant's claims because it was not made to Appellant or any party with authority to settle her claims on her behalf. Because evidence of AAA's payment to Liberty Mutual violated the collateral source rule, the trial court misapplied the law in granting Respondent a credit against his liability in that amount.

Both Points I and II deal with Respondent's assertion it needed a credit to avoid Appellant receiving a double recovery. Substituting the names of the parties in this case, we find Judge Stith in *Hagar* particularly instructive on this issue. "While it is true that [AAA] may end up paying" more than it needed to, it is not Thomas' "fault" or "responsibility" to "voluntarily credit [Ramushi] this amount so that [AAA] can avoid this extra liability. The cause of [AAA's] problems

was its decision to settle [Liberty Mutual's] subrogation claim with [Liberty Mutual] alone, as if [Liberty Mutual] had received an assignment" of Thomas' claims. *Hagar*, 33 S.W.3d at 611.

Point II is granted.

## Conclusion

For the reasons stated above, we reverse and remand to the trial court with instructions to calculate Appellant's damages and determine Respondent's liability without a credit for money paid by AAA to Liberty Mutual.

_____
Philip M. Hess, Judge

Kelly C. Broniec, P.J. and
James M. Dowd, J. concur.