

## MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| KRISTY RICHARDS, | ) | |
| | ) | |
| Appellant, | ) | WD87349 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| THE BUNKHOUSE BAR & GRILL, LLC, | ) | May 27, 2025 |
| AND THE CINCINNATI SPECIALTY | ) | |
| UNDERWRITERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**Appeal from the Circuit Court of Platte County, Missouri
Honorable Megan Blair Benton, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge Presiding,
Janet Sutton, Judge, and James Edward Welsh, Special Judge**

This appeal arises out of Kristy Richards' (Richards) equitable garnishment action and petition for declaratory judgment filed against The Bunkhouse Bar & Grill, LLC (the Bunkhouse) and the Cincinnati Specialty Underwriters Insurance Company (Cincinnati). Richards sought recovery from Cincinnati of the full $405,000 judgment awarded to her for bodily injury against Cincinnati's insureds in an underlying lawsuit alleging common law negligence on the part of the Bunkhouse and battery against R.J., the Bunkhouse's owner (Owner). Cincinnati filed a cross-claim and counter-claim for declaratory judgment, seeking a judgment that Richards' recovery was limited by a $25,000 policy sublimit and that Cincinnati

had fully satisfied its obligation under its policy. The circuit court of Platte County (trial court) entered judgment in favor of Cincinnati, concluding that Richards' recovery from Cincinnati was limited by the $25,000 sublimit in the insurance policy, and, because Cincinnati had previously paid that amount toward the judgment it had satisfied its obligation under the policy. In two points on appeal, Richards argues that the trial court erred in concluding that the insurance policy's assault and battery exclusion applied, and that the trial court erred in concluding that the concurrent proximate cause rule did not apply. We affirm.

<strong>Factual and Procedural Background[1]</strong>

Richards sued Owner for battery, and the Bunkhouse for common law negligence and negligence *per se*. Richards alleged that on the night of August 23, 2013, to the early morning on August 24, 2013, she was at the Bunkhouse. Richards alleged that unknown men harassed and threatened her, and that Owner and other women attacked her, causing her injuries. The court dismissed the negligence *per se* claim, and a jury trial was held in March 2018 on Richards' claim for battery against Owner and her claim for common law negligence against the Bunkhouse.

At trial, Richards testified that Owner punched her in the face and pulled her to the ground. Richards testified that Owner and a group of girls beat her, ripped out her hair, attacked her eyes and ears, and ripped off some of her clothes. As a result, Richards' ear was detached, her face and head had cuts, scrapes, and welts, and her wrist, arm, and shoulder were scraped, bruised, and swollen.

---

[1] We take the factual background from the stipulation of facts that the parties filed in the equitable garnishment case.

2

Owner testified that she punched Richards with a closed fist after Richards swung at her. Owner also testified that the Bunkhouse did not employ a bouncer or other security other than the female staff members, and the Bunkhouse's only rule to prevent or suppress a violent fight was to ask people to leave.

The court submitted a verdict directing instruction against Owner which stated:

> Your verdict must be for plaintiff Kristy Richards on her claim for personal injuries against defendant [Owner] if you believe:
>
> First, defendant [Owner] intentionally struck plaintiff, and
>
> Second, defendant [Owner] thereby directly caused or directly contributed to cause plaintiff bodily harm.
>
> Unless you believe plaintiff is not entitled to recover by reason of Instruction No. 9.

Instruction Nine was a self-defense affirmative defense instruction and read as follows:

> Your verdict must be for defendant [Owner] if you believe:
>
> First, defendant [Owner] had reasonable cause to apprehend and did apprehend bodily harm from plaintiff, and
>
> Second, defendant [Owner] did not create the situation that caused defendant [Owner]'s apprehension, and
>
> Third, the defendant [Owner]'s act of striking plaintiff was in defense against this apprehended bodily harm, and
>
> Fourth, defendant [Owner] used only such force as was reasonable and necessary.

The court submitted a verdict directing instruction against the Bunkhouse which stated:

> In your verdict, you must assess a percentage of fault to defendant The Bunkhouse Bar & Grill, whether or not plaintiff was partly at fault, if you believe:
>
> First, defendant The Bunkhouse Bar & Grill held its premises open for members of the general public to enter and consume beverages; and
>
> Second, plaintiff was a patron of defendant The Bunkhouse Bar & Grill; and

3

Third, defendant [Owner], or defendant The Bunkhouse Bar & Grill's patrons, had vicious tendencies and were likely to inflict injury on others; and

Fourth, defendant The Bunkhouse Bar & Grill knew, or by using ordinary care could have known of the conditions in paragraph Third; and

Fifth, plaintiff did not know of the conditions in paragraph Third; and

Sixth, defendant The Bunkhouse Bar & Grill failed to use ordinary care to prevent the conditions in paragraph Third, or to warn plaintiff of the conditions in paragraph Third; and

Seventh, such failure directly caused or directly contributed to cause damage to plaintiff.

On Richards' battery claim against Owner, the jury found in favor of Owner. On Richards' claim for negligence against the Bunkhouse, the jury returned a verdict in favor of Richards against the Bunkhouse, attributing 90% of the fault to the Bunkhouse and 10% to Richards. The jury awarded Richards damages in the amount of $450,000. On April 30, 2018, the court entered judgment in favor of Richards and against the Bunkhouse in the amount of $405,000. The court also assessed $3,414.16 in costs against the Bunkhouse and ordered post-judgment interest.

Cincinnati issued a liability insurance policy (Policy) to the Bunkhouse that was in effect at the time of the underlying incident.

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

. . .

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**
   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for

4

"bodily injury" or "property damage" to which this insurance does not apply. . . .

The Policy contained an endorsement with an assault and battery exclusion with a $25,000 sublimit, which provided in part:

### EXCLUSION – ASSAULT OR BATTERY WITH LIMITED OPTIONAL COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**a.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(1)** An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;

**(2)** The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or

**(3)** The negligent:

**(a)** Employment;

**(b)** Investigation or reporting or failure to report any assault or battery to proper authorities;

**(c)** Supervision;

**(d)** Training;

**(e)** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **a**. above.

**B.** For the purpose of this endorsement the words assault and battery are intended to include, but are not limited to, sexual assault.

5

**C.** Exclusion **2.a.** of the Commercial General Liability Coverage Form is deleted in its entirety and replaced with the following:

**2. a.** Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of any insured.

**However, Paragraphs A., B., and C. above do not apply if the below schedule is completed indicating limited optional coverage has been selected.**

> **Schedule**
>
> Limits of Insurance
>
> Each Occurrence: <u>$25,000</u>
>
> Deductible Each Occurrence <u>$1,000</u>

**A.     Limits of Insurance and Deductibles**

**1.**     The Limits of Insurance shown in the Declarations are replaced by the limits designated in the Schedule above with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in the Schedule fix the most we will pay in any one "occurrence" regardless of the number of:

**a.**     Insureds;

**b.**     Claims made or "suits" brought; or

**c.**     Persons or organizations making claims or bringing "suits".

On May 18, 2018, Cincinnati issued a check to Richards for $29,711.24, representing the $25,000 policy limits, costs of $3,414.16, and post-judgment interest of $1,297.08.

On March 10, 2022, Richards filed an equitable garnishment action against Cincinnati to collect the full judgment amount.[2] Cincinnati filed a cross-claim and counterclaim for declaratory judgment asserting that Richards' recovery was limited by the $25,000 sublimit

---

[2] The action listed the Bunkhouse as a defendant because it is the insured. Richards, however, did not plead a claim against the Bunkhouse, only Cincinnati in this equitable garnishment action.

contained in the Policy under the assault and battery exclusion.  The parties both filed summary judgment motions, which the trial court denied.

The trial court held a bench trial in May 2024 and the parties submitted stipulated facts for the trial court to consider.  On July 9, 2024, the trial court entered its judgment concluding that Richards' injuries arose out of an assault and battery and the failure to prevent assault and battery, that the concurrent proximate cause rule did not apply, and that Richards' recovery against Cincinnati was limited to the $25,000 policy sublimit, which Cincinnati had already paid. The trial court concluded that Cincinnati had satisfied its obligations under the Policy with regard to the judgment entered against the Bunkhouse.

Richards appeals.

**Standard of Review**

As in any other court-tried matter, this Court reviews the trial court's judgment under the *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), standard.  *Heckadon v. Universal Underwriters Ins. Co.*, 586 S.W.3d 789, 799 (Mo. App. W.D. 2019).  "[W]e will affirm the judgment unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or misapplies the law."  *Id*. (quoting *Penn-Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 596 (Mo. App. W.D. 2010)).  Interpreting the terms of an insurance policy is a question of law and is reviewed *de novo*.  *Id.  See also Scottsdale Ins. Co. v. Olivares*, 614 S.W.3d 65, 70 (Mo. App. W.D. 2020).

**Legal Analysis**

This appeal arises from an equitable garnishment action brought pursuant to section 379.200.[3]  "An equitable garnishment action is a legal proceeding, authorized by section 379.200

---

[3] Statutory references are to RSMo (2016).  Section 379.200 provides in relevant part:

7

[ ], to reach insurance money in satisfaction of a judgment." *Baker v. Weaver-Baker*, 550 S.W.3d 125, 129 (Mo. App. W.D. 2018) (quoting *Kretsinger Real Est. Co. v. Amerisure Ins. Co.*, 498 S.W.3d 506, 510 (Mo. App. W.D. 2016)). "To establish an equitable garnishment claim, the plaintiff must prove that he obtained a judgment in his favor against the insurance company's insured, the policy was in effect when the incident occurred and that the injury is covered by the insurance policy." *Kotini v. Century Sur. Co.*, 411 S.W.3d 374, 377 (Mo. App. E.D. 2013); *Kretsinger*, 498 S.W.3d at 510-11. "The underlying judgment is binding on the insurer by way of the doctrine of collateral estoppel," and it affords a plaintiff the same rights the insured has against the insurance company. *Kotini*, 411 S.W.3d at 378.

The plaintiff has the burden to show by substantial evidence that the claim is within the insurance contract's coverage. *Id.* If an insurance company relies on a policy exclusion to deny coverage, the insurance company bears the burden of proving such exclusion. *Id.*; *Olivares*, 614 S.W.3d at 70; *Jensen v. Allstate Ins. Co.,* 349 S.W.3d 369, 374-75 (Mo. App. W.D. 2011).

### Point One—Assault and Battery Exclusion

In her first point, Richards argues the trial court erroneously declared and misapplied the law when it found that she was not entitled to recover the full judgment amount against the

---

Upon the recovery of a final judgment against any person, firm or corporation by any person . . . for loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company . . . and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment. . . ."

Bunkhouse,[4] and its insurer. As best as we can discern, Richards argues that the Policy's assault and battery exclusion was inapplicable because she claims that the jury found Owner did not commit a battery, that the evidence showed that Owner's conduct was "unplanned and unintentional," and that there was no evidence that the Bunkhouse instigated or directed its employees to engage in such conduct.

We first note that Richards' assertion, that the jury found that Owner did not commit battery, is incorrect. "[T]he law of self defense implies the right of attack when it reasonably appears necessary for protection against an impending assault, but it depends on necessity, real or apparent, and the danger must be imminent or reasonably appear to be so." *State v. Miller*, 91 S.W.3d 630, 635 (Mo. App. W.D. 2002) (citation omitted). A comment to the Restatement (Second) of Torts on self-defense, states in relevant part:

> The intentional infliction of bodily harm upon another is privileged under the rule stated in this Section only if it is inflicted for the purpose of preventing the other from inflicting a harmful or offensive contact upon the actor or for the purpose of preventing the continuance of harmful or offensive contacts which the other has already inflicted upon the actor, and which the other threatens to continue to inflict.

Restatement (Second) of Torts, § 63 cmt. e (Am. Law Inst. 1965). As we stated *supra*, the court submitted a self-defense affirmative defense instruction for Owner. Under this instruction, the jury was informed that it must find for Owner if she had reasonable cause to apprehend and did apprehend bodily harm from Richards, that Owner did not create the situation, that Owner's "act

---

[4] In her points relied on and argument, Richards continually refers to the Bunkhouse's liability to pay rather than Cincinnati's liability to pay the judgment. In Richards' prayer for relief in her petition for equitable garnishment and for a declaratory judgment, she requested that the trial court find Cincinnati is obligated under the Policy to pay the judgment against the Bunkhouse. There is no claim on appeal that the Bunkhouse itself is not liable to pay the underlying judgment entered against it. Richards' actual claim is that Cincinnati, under the Policy, should be required to pay the full judgment.

of striking" Richards was in defense of the apprehended bodily harm, and that Owner only used reasonable and necessary force. Owner herself admitted that she punched Richards with a closed fist after Richards swung at her. The parties also agree that a group of several girls dragged Richards to the ground and "beat" her by, among other things, ripping the hair out of her head and striking her in the back of the head. The jury's finding that Owner acted in lawful self-defense does not mean that an assault or battery did not occur, but that Owner was legally justified in her use of force and would not be civilly liable to Richards for injuries arising out of that justified use of force.

We next turn to whether Richards' injuries giving rise to the judgment against the Bunkhouse fell under the Policy's coverage or was specifically excluded. When interpreting an insurance policy, we give the policy language its plain meaning, or the meaning that would be attached by an ordinary insurance purchaser. *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. banc 2019). When the policy language is clear and unambiguous, we enforce the policy as written. *Id.* Richards does not claim that the Policy is ambiguous and she agrees that it must be enforced as written.

Richards argues that under the Policy, Cincinnati was obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" Richards further contends that the Policy states that it applies to "bodily injury" or property damage if caused by an "occurrence." Richards posits that Owner's act—striking Richards in the head—was unplanned and unintentional[5] and that it therefore qualified as an "occurrence" under the Policy. Richards argues that she sustained bodily injuries as a result of

---

[5] Richards' argument is hard to follow on this specific contention because she then also argues that "one of [t]he Bunkhouse's employees committed a 'voluntary intentional act,'" resulting in Richards' injuries. However, there is no evidence or allegation that any employee of the Bunkhouse, other than Owner, struck Richards.

10

an "accident" and, therefore, under the Policy Cincinnati was liable to pay the full amount of the judgment.

Richards' extended discussion of "accident" and "occurrence" ignores the applicable Policy exclusion to coverage for injuries arising out of an assault or battery or the failure to prevent an assault or battery.

> Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. . . . Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

*Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. banc 2014) (quoting *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 162-63 (Mo. banc 2007)).

Here, the Policy was accompanied by limitations. Most notably for this case, an endorsement adding an exclusion to coverage for bodily injury arising out of an actual or threatened assault or battery caused by, or at, an insured, their employee, patron, or any other person's instigation, or the failure of the insured to prevent or suppress an assault or battery, but only to a limit of $25,000.

Missouri courts have judicially defined "arising out of" as used in insurance contracts to have its plain and ordinarily understood meaning of "originating from," "having its origins in," "growing out of," or "flowing from." *Walden v. Smith*, 427 S.W.3d 269, 274-76 (Mo. App. W.D. 2014) (quoting *Schmidt v. Utilities Ins. Co.*, 182 S.W.2d 181, 184 (Mo. 1944)). The Policy does not define the terms "assault" or "battery" so we consult their dictionary definitions to determine their ordinary meaning. *Kotini*, 411 S.W.3d at 380.

Webster's dictionary defines "assault" and "battery," in relevant part, as follows:

11

Assault . . . 1 a: a violent physical or verbal attack . . . 2 a: a threat or attempt to inflict offensive physical contact or bodily harm on a person . . . that put the person in immediate danger of or in apprehension of such harm or contact[.]

Battery . . . 1 . . . b: an offensive touching or use of force on a person without the person's consent [.]

*Id.* (quoting *http://www.merriam-webster.com/dictionary/assault* and *http://www.merriam-webster.com/dictionary/battery*). When we consider the terms in their ordinary meaning, "the [P]olicy's assault and battery exclusion is not ambiguous and encompasses any conduct within the meaning of the terms." *Id.* Generally, "where a plaintiff's negligence claim arises out of an assault or battery, the assault or battery exclusion bars coverage of the insured's negligence claim." *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (Mo. App. E.D. 2007).

We reject Richards' argument that this is an occurrence that falls under the policy coverage. The application of the subsequent exclusion cannot be ignored. We conclude, as the trial court did, that Richards' injuries upon which the judgment was based arose from an assault and battery. At trial, Owner testified that she punched Richards with a closed fist after Richards swung at her. Richards testified that a group of as many as seven other girls dragged her down to the ground, ripped hair out of her head, beat her in the back of the head, "rip[ped]" at her eyes, ears, and clothes in a "really brutal attack." As a result, Richards' ear was detached, her face and head had cuts, scrapes, and welts, and her wrist, arm, and shoulder were scraped, bruised, and swollen.

In *Acceptance Insurance Company v. Winning Concepts of Westport, Inc.*, a plaintiff alleged that he was injured by two employees acting within the course and scope of their employment at a bar. 842 S.W.2d 206, 207 (Mo. App. W.D. 1992). In his first count, the plaintiff alleged that two employees assaulted and battered him by repeatedly striking and beating him, and in his second count, the plaintiff alleged that the two employees had violent

12

disorderly propensities and that the bar negligently employed the two knowing of their violent propensities. *Id.* The bar's insurance policy had an assault and battery exclusion:

> It is agreed that the insurance does not apply to Bodily Injury, including death, and/or Property Damage arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

*Id.* The insurer sought a declaration that its policy did not cover and excluded the plaintiff's claims. *Id.* The bar appealed from the trial court's judgment finding that there was no coverage, contending that because there was a claim for negligent hiring and retention, the assault and battery exclusion was not applicable. *Id.* at 208. We examined the policy's "clear language," which provided that there was no coverage for injury "arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts." *Id.* We reasoned that "[n]egligently hiring persons with violent propensities which negligence results in an individual being assaulted and battered is an act or omission in connection with the prevention or suppression of assault and battery and therefore is excluded under the terms of the policy." *Id.*

The exclusion in *Winning Concepts* is similar to this Policy's exclusion. There is no ambiguity in the terms of the Policy and its language is clear. Even though the jury determined that Owner acted in self-defense, the Policy's assault and battery exclusion applied to limit Richards' recovery against Cincinnati to the $25,000 sublimit. As we have said, the judgment against the Bunkhouse was based upon its negligence in failing to use ordinary care to prevent the likely infliction of injury on others by Owner or its patrons who had vicious tendencies, or the failure to warn Richards of the likelihood of injury. As *Winning Concepts* illustrates, such negligence qualifies as a failure to prevent or suppress assault or battery and is, therefore, barred by the Policy's assault and battery exclusion. *See also Penn-Am. Ins. Co. v. The Bar, Inc.*, 201 S.W.3d 91, 96 (Mo. App. W.D. 2006) (explaining that "[t]his court has consistently held that

negligence actions arising out of an assault and/or battery fall within the exclusionary language and are not covered under the policy.").

Because the policy contained an exclusion for injuries arising out of assault and battery or the failure to prevent assault and battery, the trial court did not err in concluding that Richards' recovery against Cincinnati was limited by the $25,000 sublimit contained in the Policy.

Point one is denied.[6]

### Point Two—Concurrent Proximate Cause

In her second point, Richards argues that the trial court erred in concluding that she was not entitled to coverage under the concurrent proximate cause rule because the Bunkhouse's negligence was an independent cause of her injuries, and that the Bunkhouse's negligence put her at risk for any number of harms including injuries resulting from her "altercation" with Owner. Richards contends that her negligence claim was not dependent on the occurrence of an assault or battery. We disagree.

"The concurrent proximate cause rule states that an insurance policy will be construed to provide coverage where an injury was proximately caused by two events—even if one of these events was subject to an exclusion clause—if the differing allegations of causation are independent and distinct." *Lewellen v. Universal Underwriters Ins. Co.*, 574 S.W.3d 251, 265 (Mo. App. W.D. 2019). *See also Intermed Ins. Co. v. Hill*, 367 S.W.3d 84, 88 (Mo. App. S.D. 2012) ("[W]here an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable as long as one of the causes is covered by the policy.").

---

[6] Nothing in today's ruling is intended to comment upon any collection efforts by Richards against the Bunkhouse's assets for any outstanding judgment balance. Our ruling today is intended only to comment upon the liability insurer's responsibility to indemnify its insured, the Bunkhouse.

"For the rule to apply, the injury must have resulted from a covered cause that is truly independent and distinct from the excluded cause." *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 348 (Mo. banc 2015) (internal quotation marks and citation omitted). That is not the case here.

Richards cites *Adams v. Certain Underwriters at Lloyd's of London*, 589 S.W.3d 15 (Mo. App. E.D. 2019), and *American Family Mutual Insurance Company v. Parnell*, 478 S.W.3d 489 (Mo. App. W.D. 2015), to support her assertion that Cincinnati is liable for the full amount of the judgment under the concurrent proximate cause rule. We find that the facts in *Adams* and *Parnell* are distinguishable from the facts of this case.

In *Adams,* the victim, a minor, was part of a large crowd of children and young adults gathered outside a nightclub. 589 S.W.3d at 21. The group was not allowed inside the nightclub and had to wait outside. *Id.* As they waited, the crowd grew restless and fights broke out. *Id.* At some point, a person drove by and fired shots into the crowd. *Id.* The crowd panicked and some tried to enter the nightclub but the doors had been locked. *Id.* The victim was locked out of the nightclub without cover and was shot and killed. *Id.* The victim's mother filed suit against the property owner for negligent security and negligently locking the doors. *Id.* at 21-22. The *Adams* policy excluded claims for bodily injuries "arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery." *Id.* at 22. It also excluded claims for bodily injuries "arising out of charges or allegations of negligent hiring, training, placement, or supervision with respect to [the assault-and-battery provision]." *Id.* The trial court found that the shooting incident was excluded by the policy. *Id.* at 25.

15

On appeal, the Eastern District noted that the record did not definitively reveal whether the decedent was the victim of an assault or battery, and that the petition itself contained no allegations that the decedent was assaulted or battered, nor was it an essential element of the negligence claim. *Id.* at 29. The Court stated that the petition "allege[d] [the victim] was shot when an unknown individual 'recklessly fired stray bullets' into the crowd," and that "[w]hile this leaves open the possibility [the victim] was the intended or unintended victim of an assault and/or battery, it does not prove it." *Id.* The Court later said that the petition alleged that the victim was "struck by a random bullet fired recklessly by an unknown individual, *without any intent to assault or batter anyone*[.]" *Id.* at 33 (emphasis added). The Court concluded that the insurance company failed in its burden to prove that the plaintiff's claim was subject to the assault and battery exclusion. *Id.* at 29.

The Court held that coverage existed for the plaintiff's negligent supervision claim under the concurrent proximate cause rule, and that because assault and battery was not "an essential element of the negligence claim," the two causes of injury were independent and distinct, and thus coverage applied. *Id.* at 33-34.

In *Parnell*, the Parnells operated an in-home daycare business and a minor was sexually assaulted by the Parnells' eleven-year-old-son. 478 S.W.3d at 491. The minor's mother filed a petition alleging negligent supervision claims, and the insurance company requested a declaration that the policies did not provide coverage. *Id.* The exclusions stated:

> 1. Abuse. We will not cover bodily injury or property damage arising out of or resulting from any actual or alleged:
>
> a. sexual molestation or contact;
>
> b. corporal punishment; or
>
> c. physical or mental abuse of a person.

16

....

10. Intentional Injury. We will not cover bodily injury or property damage caused intentionally by or at the direction of any insured even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of any insured.

*Id.* at 491-92. The trial court determined that the Parnells' insurance policies provided coverage for the claims of negligent supervision despite the insurance policy exclusions for intentional injury and abuse. *Id*. at 492.

On appeal, the Court found that the concurrent proximate rule applied to afford coverage to the Parnells on the minor's negligent supervision claim. *Id.* at 494. The Court held that the minor's "claim of negligent supervision is a separate and non-excluded cause of her injuries, apart from the intentional sexual abuse." *Id*. *Parnell* concluded that "the claim for negligent supervision of a minor is unrelated to and can occur without intentional injury or sexual abuse," and that the failure to properly supervise the minor put her at risk for "any number of harms, either self-inflicted or inflicted by others." *Id*.

The holdings in *Adams* and *Parnell* are not persuasive under the facts presented here. The parties agree that Richards was struck numerous times, that she suffered physical injury as a result, and that Richards was the intended victim of the assault and battery. The assault and battery and the Bunkhouse's negligence were not mutually exclusive, but instead, were related and interdependent acts. Without the assault and battery, Richards would not have been injured and she would have had no basis for the negligence action. The Bunkhouse's negligence, as found by the jury, was not a separate and non-excluded cause apart from the assault and battery. *See, e.g.*, *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 345 (Mo. App. E.D. 2000) (holding that negligence was not independent and distinct because "[w]ithout the underlying assault and battery, there would have been no injury and therefore no basis for plaintiffs' action . . . for

17

negligence"). Our conclusion is consistent with prior Missouri case holdings that "[a]lthough the injuries may have been caused by the negligent acts of the defendant[,] that does not necessarily mean that they did not arise out of an assault or battery[,]" and in circumstances such as those presented here, "where a plaintiff's negligence claim arises out of an assault or battery, the assault or battery exclusion bars coverage of the insured's negligence claim." *Trainwreck*, 235 S.W.3d at 44 (citing *Capitol Indemnity Corp. v. Callis*, 963 S.W.2d 247, 250 (Mo. App. W.D. 1997)).

Further, Richards' assault and battery were one of a narrow range of foreseeable harms resulting from the Bunkhouse's negligence as submitted to and found by the jury. The jury found that the Bunkhouse was negligent because it failed to use ordinary care to prevent the likely infliction of injury by Owner or its patrons who had vicious tendencies, or the failure to warn Richards of the likelihood of injury. The harms that foreseeably flow from the Bunkhouse's negligence as found by the jury are limited and include such things as assaults, batteries, physical altercations, and "not much more." *See Great Lakes Ins. SE v. Andrews,* 33 F.4th 1005, 1010-11 (8th Cir. 2022) (applying Missouri law and holding that *Adams* was not persuasive, and that because the defendants were alleged to know that a perpetrator was violent and belligerent, the harms that foreseeably flowed from the failure to restrain such a person were "few" and included "assaults, batteries, physical altercations, and not much more" and, thus, it was "not only incidental" that the defendant's negligence resulted in precisely those things).

As a result of the Bunkhouse's negligence, Richards was not subjected to a broad, innumerable range of harm like the negligently supervised children in *Adams* and *Parnell*. Instead, Richards was subjected to the specific harm for which the jury found the Bunkhouse negligent—injury inflicted by individuals with known vicious tendencies. The Bunkhouse's

18

negligence was not wholly separate and distinct from the assault and battery, and the concurrent proximate cause rule does not apply to provide coverage.

The trial court properly concluded that the concurrent proximate cause rule did not apply. Point two is denied.

## Conclusion

The judgment of the trial court is affirmed.

_Janet Sutton_
Janet Sutton, Judge

Anthony Rex Gabbert, P.J., and James Edward Welsh, Sp. J. concur.